## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | |
|---|---|
| **R.M., A MINOR CHILD THROUGH HER MOTHER, EMILY MORENO**<br>31366 St. Andrews<br>Westlake, OH  44145<br><br>*Plaintiff,*<br><br>v.<br><br>**MAX L. MILLER**<br>435 Oakmoor Rd.<br>Bay Village, OH 44113,<br><br>**AARON MINC**<br>200 Park Ave, Suite 200<br>Orange Village, Ohio 44122,<br><br>and<br><br>**MINC LLC**<br>c/o Aaron Minc, Statutory Agent<br>200 Park Ave, Suite 200<br>Orange Village, Ohio 44122<br><br>*Defendants.* | Case No. _____<br><br>Judge _____<br><br>Magistrate Judge _____ |
| **PLAINTIFF R.M.'S COMPLAINT** ||

### NATURE OF THE ACTION

1.      This is a civil-rights action brought on behalf of R.M., a two-and-a-half-year-old girl, by her mother, Emily Moreno.

2.      On August 2, 2026, R.M.'s father, Defendant Congressman Max Miller, and Miller's lawyer, Defendant Aaron Minc of Defendant Minc LLC, recklessly published and disclosed to the world a nude image of the child depicting her genitalia. (A veteran pediatrician confirms that

the photo depicts this. Dr. B. Gascoigne expert letter, Aug. 11, 2026, **Ex. 1**.) Faced with a mostly self-inflicted dumpster fire of public attention to his reputation for abusive behavior, Miller so desperately wanted to salvage his political job, that he recklessly and intentionally provided Minc a trove of documents and photos, indifferent about what they contained or how they were used.

3.　　The photos included the nude image. Then Minc, under intense pressure from Miller that only heightened the recklessness, placed or kept that image in an electronic Dropbox folder a link to which he provided Miller, knowing Miller would disseminate it in conjunction with a planned Sunday, August 2, 2026 live video broadcast on the social-media platform X, formerly known as Twitter. After his broadcast diatribe against Ms. Moreno and accusations of abuse, Miller then blasted out the Minc Dropbox folder's link.

4.　　More than 400,000 people saw or interacted with the two posts containing the folder.







5. According to Minc, the image remained online for about 23 hours, for anyone to download. *See* A. Minc, email, (Aug. 3, 2026, 7:32 PM), attached as **Ex. 2**.

6. Minc acknowledged responsibility.

7. But despite repeated requests from Ms. Moreno's counsel, Defendants have refused to provide information about how many times Defendants disclosed and transferred the intimate image to viewers who accessed, viewed, or downloaded the intimate image. Nor will Defendants answer questions about who might have accessed, viewed, or downloaded the image.

8. Rather than answering questions about the extent of the damage and what the plan was the clean up the mess, Minc first started lying to the media about the seriousness of their offense, falsely insisting that there was no nude image in which genitals were visible. He and Miller diverted attention to a different, topless image of the girl. But they knew these were lies because Ms. Moreno's counsel had written to Minc with the actual document's title and told Minc the image is labeled IMG_9158—a different image.

9. Pressed further to answer the questions he was ignoring, Minc lawyered up.

10. Defendants' non-consensual disclosures violated 15 U.S.C. § 6851 (Civil action relating to disclosure of intimate images). They are liable under that statute for liquidated damages of $150,000 per image disclosure and transfer.

11. They also face civil liability for criminal acts under Ohio Rev. Code § 2307.60, including the crimes of "Illegal use of minor or impaired person in nudity-oriented material or performance" (Ohio Rev. Code § 2907.323(A)(2)), attempt, and complicity.

12. And Defendants are liable for Ohio state-law torts of wrongful invasion of privacy, negligence, and civil conspiracy.

## PARTIES

13. Plaintiff R.M. is a two-year-old child living under shared custody with her mother in Cuyahoga County. Her mother, through whom she is suing, is Emily Moreno.

14. Defendant Max Miller resides in Cuyahoga County, Ohio. He is a member of Congress running for re-election—his primary motive for his reckless, senseless, selfish disclosure of the image at issue here.

15. Defendant Aaron Minc resides in Cuyahoga County, Ohio. He is Max Miller's counsel in the prosecution of a defamation action in Cuyahoga County against Emily Moreno. When

disclosing the image at issue here, he acted in conspiracy with Miller and as his agent—but for no legitimate litigation purpose because the image at issue had nothing to do with that suit's allegations. This was simply a ham-handed, reckless public-relations move—not a lawyerly function.

16. Defendant Minc LLC is a law firm in Cuyahoga County, Ohio of which Aaron Minc is the founding principal. It is liable under respondeat superior, under organizational criminal (and thus under Ohio law, civil) liability, because Minc used its tools and resources to commit the illegal acts stated here, and because Minc engaged in these reckless acts to make money for and benefit the firm.

## JURISDICTION AND VENUE

17. This Court has subject-matter jurisdiction under 28 U.S.C. §§ 1331, 2201 for federal claims under 15 U.S.C. § 6851.

18. This Court has supplemental jurisdiction over the state-law claims under 28 U.S.C. § 1367.

19. This Court has personal jurisdiction over Defendants, who reside in and conduct business in this District.

20. Venue is proper under 28 U.S.C. § 1391, because the events giving rise to the claims took place within this District.

## FACTS

21. Max Miller is a U.S. Representative who represents Ohio's 7th Congressional District. He is up for reelection in November 2026.

22. Miller and Ms. Moreno were married but finalized their divorce in June 2025. They share a daughter, R.M.

23. Since their divorce, the pair have been embroiled in an unfortunately public custody dispute in which Miller's abusive behavior has been a driving issue. *See*, *e.g.*, Abby Vesoulis, *Rep. Max Miller Has a History of Withholding His Daughter's Blue Bunny*, MOTHER JONES (Aug. 4, 2026), at https://www.motherjones.com/politics/2026/08/rep-max-miller-has-a-history-of-withholding-his-daughters-blue-bunny/.

24. Defendant Miller, represented by Defendant Minc, sued Ms. Moreno in the Court of Common Pleas in Cuyahoga County for defamation after an article from British tabloid *The Daily Mail* published a report about the existence of allegations that Miller, during their marriage, threw scalding water on Ms. Moreno and sprayed her with the sink hose.

25. Miller's suit and his touting of it brought even more public attention to allegations of abuse against Miller, who has also been accused of abusing at least three women, including Ms. Moreno, and of abusing R.M.

26. Allegations of abuse against R.M. are not at issue in the defamation lawsuit. Miller's complaint against Ms. Moreno is limited to *The Daily News*'s report of scalding-water incident.

27. On Sunday, August 2, 2026, at about 10:00 AM, Miller hosted a public livestream on his X.com account using his handle @MaxMillerOH. During the video, Miller argued against allegations that he abused Ms. Moreno and R.M. *See generally* X.com video, filed manually as **Ex. 3**.

28. Miller has more than 57,000 followers on X.com. In the days following his livestream, Miller's name trended on the social-media website several times.

29. Miller has also been under fire in the media because of his own efforts to amplify the abuse allegations, garnering national and international attention. In that moment, eyes from all over the nation and world were on him.

30. During the stream, Miller said he would post a link to "evidence" he claimed exonerated him. He urged viewers to "take a look at the documents" that he had made accessible to them with Minc's help. *Id.* at 18:56–58. *See also id.* at 10:33–42, 11:40–49, 11:56–24, 14:34–36, 15:34–40, 19:25–30 (repeatedly urging viewers to look in the Dropbox folder).

31. At 10:23 AM, Miller posted a link to a public Dropbox folder labeled "Miller media folder," distributing it to his thousands of followers. *See* Max Miller (@MaxMillerOH), X.COM (Aug. 2, 2026, 10:23 AM), at https://x.com/MaxMillerOH/status/2083921641503867284, attached as **Ex. 4**. Aaron Minc was listed as the folder's owner. *See* screenshot, **Ex. 5**.

32. Within a little more than 24 hours, Miller's original X post linking the open electronic Dropbox folder for the world to see had more than **204,000** views. As of August 10, 2026, that number grew to more than **233,000** views.



33. When he published the folder, Minc set the folder to allow public access, meaning that anyone could have downloaded the files it contained without creating an account, logging in, or otherwise being held easily accountable. And the folder was on the internet, meaning

downloaders weren't just Ohioans. Defendants enabled interstate, and indeed international, access.

34.     At 11:00 AM, Miller posted, "Just to be clear: these documents were produced by my personal attorneys and paid for by me directly." *See* Max Miller (@MaxMillerOH), X.COM (Aug. 2, 2026 11:00 AM), at https://x.com/MaxMillerOH/status/2083930875138367578, attached as **Ex. 6**.



35.     At first, the Dropbox link went down momentarily. At 11:12 AM, Miller posted, "Apparently, there are people who don't want this information out. Strange. Don't worry, Dropbox will be back up momentarily." *See* Max Miller (@MaxMillerOH), X.COM (Aug. 2, 2026 11:12 AM), at https://x.com/MaxMillerOH/status/2083933882471084216, attached as **Ex. 7**.

36.     Minc claimed later in an email that viewers, to whom he granted editor privilege, had deleted all the files in the Dropbox. A. Minc, email, (Aug. 3, 2026, 7:32 PM), attached as **Ex. 2**.

37.     Minc restored the documents in the Dropbox folder, republishing them.

38. At 11:22 AM, Miller posted, "Dropbox back online. Take a look." *See* Max Miller (@MaxMillerOH), X.COM (Aug. 2, 2026 11:32 AM), at

https://x.com/MaxMillerOH/status/2083939064462422509, attached as **Ex. 8**. Miller distributed a link to the Dropbox folder for the second time.

39. The folder contained several subfolders with various documents and media files, including police reports, recorded conversations between Ms. Moreno and Miller, and court documents.

40. The files were organized by topic.

41. Folder 03_Feb_1_Custody_Exchange contained a PDF of messages between Ms. Moreno and Miller sent using OurFamilyWizard, a parenting app that the domestic-relations court had ordered the pair to use to communicate. That PDF was titled "EX-306_OFW-Messages-Feb-1-to-25-2026-with-Attachments."

42. An August 2, 2026, 10:40 AM download of the file contained a nude image of R.M. on page 53. The photo was labeled IMG_9158.

43. The intimate image depicts R.M.'s uncovered genitals, specifically R.M.'s labia. A pediatrician confirms this. (*See* Dr. B. Gascoigne, expert letter, (Aug. 11, 2026), **Ex. 1**.

44. The intimate image also shows a large, yellow bruise on R.M.'s shoulders, an image taken after the child was in Miller's custody. She was diagnosed with a broken collarbone.

45. R.M. is easily identified in the document by information displayed in connection with the visual depiction. That is, her name appears in the document, unredacted, more than 70 times.

46. The intimate image was also present in an 11:32 AM download of the files, after Minc republished them.

47. According to Minc, the image remained online for anyone to download for about 23 hours. *See* A. Minc, email, (Aug. 3, 2026 7:32 PM), attached as **Ex. 2**.

48. Neither R.M. nor her mother consented to Defendants sharing the intimate image with the world.

49. Miller and Minc knew or recklessly disregarded that neither R.M. nor Ms. Moreno consented to that image's disclosure and publication. Because Ms. Moreno had counsel, Minc did not speak with her to get her consent. Miller specifically distributed the link to try to publicly humiliate and discredit Ms. Moreno, acting without her permission or consent, and uncaringly using a nude image of his daughter in the process.

50. Miller and Minc did not publish or distribute the image in good faith to a law-enforcement officer or agency; as part of a legal proceeding; as part of medical education, diagnosis, or treatment; or to report or investigate unlawful content or unsolicited or unwelcome conduct. They published it to try to harm Ms. Moreno publicly, consequences to R.M. be damned.

51. At 6:40 PM on August 3, 2026, Ms. Moreno's counsel wrote Minc to demand details about why Defendants had published and distributed R.M.'s nude image and what they were going to do about it. *See* S. Chandra, letter (Aug. 3, 2026), attached as **Ex. 9**.

52. Responding, Minc admitted that he published a pre-redaction, unedited version of the document, which included the nude image. *See* A. Minc, email (Aug. 3, 2026 7:32 PM), attached as **Ex. 2**. Minc said he did not realize his mistake until 9:40 AM on August 3, 2026, about 23 hours after the initial publication.

53. "I was under an enormous amount of pressure to get the files and link live again as quickly as possible." Minc admitted. But, in his reckless haste to assist Miller with his public-

relations assault, and pressured by a manic and furious Miller who was intent on maligning his ex-wife online, Minc failed to ensure that the files, which contained a R.M.'s nude image, were properly redacted.

54.     Minc claimed that he initially redacted the R.M.'s nude image, demonstrating his knowledge that earlier versions of the files, once restored, would contain that image. A. Minc, email, (Aug. 3, 2026 7:32 PM), attached as **Ex. 2**. Minc knew that, by restoring the files to an earlier state, he ran the risk of sharing R.M.'s nude picture.

55.     Minc claimed in his email that he had reviewed and redacted the files before they were initially shared and publicly posted. Yet a download of the file taken at 10:40 AM, minutes after Miller shared the initial link, contained R.M.'s name and photos of her, including the intimate image. So did a 11:32 AM download. If Minc truly redacted information in the original upload, yet chose not to redact or remove the name and photos, then Defendants' public disclosure of the name and photos in the original upload wasn't just reckless—it was intentional.

56.     Minc also admitted that he granted administrative access to every user who entered the folder, so, to their heart's content, they could delete files and restore previous files—which contained the nude and other images of R.M. Because Minc placed the nude image Miller provided in the folder in the first place, no matter how many times it was redacted or deleted, any user could restore access to it.

57.     Minc further admitted that he was responsible for "reviewing, adding, deciding, or making any changes to the information that was in this folder." *Id.* He was responsible for publishing the photo in the first place, though Miller was responsible for then recklessly distributing the image he had provided Minc through his public X.com account.

58.     Minc tried to fall on his sword and take the blame. A. Minc, email, (Aug. 3, 2026 7:32 PM), attached as **Ex. 2**. But Miller gave Minc the intimate image to distribute in the first place. The creation metadata for the documents in the Dropbox folder said that Miller's congressional office created them; Minc changed the metadata to read "Minc Law LLC." Daniel Lippman (@dlippman), X.COM (Aug. 5, 2026 9:16 AM), at

https://x.com/dlippman/status/2084991823546663197?s=20.

59.     Apparently, without instructions to remove the intimate image, or even checking, Miller distributed the link to the folder publicly. Intent on publicly trashing his ex-wife, he disregarded his daughter and recklessly failed to review the folder he shared with her intimate image, before sharing it with the world. He just didn't care, as long as he could try to convince people that the sheer volume of material in the folder should cause them to doubt the many abuse allegations, from many quarters, against him.

60.     Minc refused to answer repeated questions about how many people accessed or downloaded the intimate image of R.M. and what steps he and Miller were taking to undo the damage.

61.     Rather than answer those questions and take accountability for his actions, Minc began criticizing Ms. Moreno's counsel for raising questions about the images.

62.     Minc also lied to newspaper reporters about the image, claiming that R.M. was partially clothed. *See, e.g.,* Mia McCarthy and Riley Rogerson, *Max Miller's lawyer admits to accidentally releasing 'private images' of daughter*, POLITICO (Aug. 4, 2026), at https://www.politico.com/live-updates/2026/08/04/congress/max-miller-daughter-abuse-image-01023575, attached as **Ex. 10**. While the Dropbox folder contained an image of R.M. topless, it also contained an image of

R.M. in which she is nude and her genitals are visible. It is the latter image that is the subject of this suit.

63.    Miller's recklessness is underscored by the fact that any parent knows—in this era and world filled with pedophiles, creeps, and AI-generated image alteration and video generation—not to put nude pictures of their child, or any child, on the public internet.

64.    Litigators who regularly handle allegations of sexual abuse like Minc know that, too.

65.    Under 15 U.S.C. § 6851, R.M. is entitled to $150,000 in liquidated damages for each time her image was downloaded from Minc's and Miller's public Dropbox. She is also entitled to reasonable attorney fees and other litigation costs. Defendants must preserve and provide data about how many times they victimized R.M.

## CLAIMS

### CLAIM 1
#### CIVIL ACTION RELATING TO DISCLOSURE OF INTIMATE IMAGES, FOR DAMAGES AND INJUNCTIVE RELIEF, UNDER 15 U.S.C. § 6851
#### AGAINST DEFENDANTS MAX L. MILLER, AARON MINC, AND MINC LLC

66.    Plaintiff incorporates all previous allegations.

67.    Title 15 U.S.C. § 6851(b)(1)(A) establishes a federal civil cause of action by

> an individual whose intimate visual depiction is disclosed, in or affecting interstate or foreign commerce or using any means or facility of interstate or foreign commerce, without the consent of the individual, where such disclosure was made by a person who knows that, or recklessly disregards whether, the individual has not consented to such disclosure, may bring a civil action against that person in an appropriate district court of the United States

for actual damages or liquidated damages of $150,000 for each disclosure and injunctive relief, along with the costs of the action, including reasonable attorney fees and litigation costs.

68.    Title 15 U.S.C. § 6851(a) defines key terms in the statute that apply here:

**(2) Consent**
The term "consent" means an affirmative, conscious, and voluntary authorization made by the individual free from force, fraud, misrepresentation, or coercion.

**(3) Depicted individual**
The term "depicted individual" means an individual whose body appears in whole or in part in an intimate visual depiction and who is identifiable by virtue of the person's face, likeness, or other distinguishing characteristic, such as a unique birthmark or other recognizable feature, or from information displayed in connection with the visual depiction.

**(4) Disclose**
The term "disclose" means to transfer, publish, distribute, or make accessible.

**(5) Intimate visual depiction**
The term "intimate visual depiction"—

> **(A)** means a visual depiction, as that term is defined in section 2256(5) of title 18, that depicts—
>
> > **(i)** the uncovered genitals, pubic area, anus, or post-pubescent female nipple of an identifiable individual; …

\*\*\*

69.    Defendants violated 15 U.S.C. § 6851(b)(1)(A)'s prohibition against disclosing these intimate visual depictions of a depicted individual by disclosing—that is publishing, distributing, making the images accessible to the public, and transferring through the Dropbox file-sharing service—a nude photo of R.M. depicting her genitals—in or affecting interstate or foreign commerce and using any means or facility of interstate or foreign commerce, without R.M.'s or her mother's consent, and knowing that, and recklessly disregarding whether, anyone consented.

70.    Defendants are liable to R.M. for actual damages or liquidated damages of $150,000 per disclosure (transfer, publishing, distribution, or making accessible), and equitable relief.

71.     Defendants' acts were willful, egregious, malicious, and worthy of substantial sanction to punish and deter Defendants and others from engaging in this type of unlawful conduct. Their acts also merit injunctive relief.

### CLAIM 2
### CIVIL LIABILITY FOR CRIMINAL ACTS UNDER OHIO REV. CODE § 2307.60 (A)(1), INCLUDING, BUT NOT LIMITED TO:

### (A) ILLEGAL USE OF MINOR OR IMPAIRED PERSON IN NUDITY-ORIENTED MATERIAL OR PERFORMANCE (§ 2907.323(A)(2));

### COMBINED WITH

### (B) § 2923.02 (ATTEMPT), AND

### (C) § 2923.03 (COMPLICITY)

### AGAINST DEFENDANTS MAX MILLER, AARON MINC, AND MINC LLC

72.     Plaintiff incorporates all previous allegations.

73.     Ohio Rev. Code § 2307.60 provides: "Anyone injured in person or property by a criminal act has, and may recover full damages in, a civil action." Ohio Rev. Code § 2307.60(A)(1). Section 2307.60 "independently authorize[s] a civil action for damages caused by criminal acts." *Jacobson v. Kaforey*, 149 Ohio St. 3d 398, 399 (2016). And no proof of an underlying criminal conviction is required when bringing a civil action under § 2307.60. *Buddenberg v. Weisdack*, 161 Ohio St. 3d 160, 2020-Ohio-3832, 161 N.E.3d 603, ¶ 11.

74.     For the Court's convenience, criminal acts Defendants committed are consolidated under this single claim, although any single one of them would establish separate civil liability under § 2307.60.

75.    Ohio Rev. Code § 2907.323(A)(2) (Illegal use of minor or impaired person in nudity-oriented material or performance) provides as follows:

> (A) No person shall do any of the following:
> \*\*\*
> (2) … use or transfer a material… of that nature [a person's child or ward who is a minor… in a state of nudity], unless the material… is… disseminated, displayed, possessed, controlled, brought or caused to be brought into this state, or presented for a bona fide artistic, medical, scientific, educational, religious, governmental, judicial, or other proper purpose, by or to a physician, psychologist, sociologist, scientist, teacher, person pursuing bona fide studies or research, librarian, member of the clergy, prosecutor, judge, or other person having a proper interest in the material or performance….

76.    None of the exceptions in the statute authorized Defendants' transfer and dissemination of the image of the child in a state of nudity.

77.    Ohio Rev. Code § 2923.02(A) (**Attempt**) provides that "No person, purposely or knowingly, and when purpose or knowledge is sufficient culpability for the commission of an offense, shall engage in conduct that, if successful, would constitute or result in the offense." (This claim incorporates all other offenses.)

78.    Ohio Rev. Code § 2923.03(A) (**Complicity**) provides that no person, acting with the kind of culpability required for the commission of an offense, shall

> (1) solicit or procure another to commit the offense;
>
> (2) aid or abet another in committing the offense;
>
> (3) conspire with another to commit the offense in violation of section 2923.01 of the Revised Code; or
>
> (4) cause an innocent or irresponsible person to commit the offense.

79.    Those who commit complicity may be criminally prosecuted and punished as if they were the principal offender.

80. Ohio Rev. Code § 2921.03(A)(4) (**Complicity**) provides that, it is a crime to "cause an innocent or irresponsible person to commit the offense." (This claim incorporates all other offenses.)

81. Defendants' conduct detailed in the facts section above and more constituted criminal acts under the above and other criminal laws.

82. The conduct complained of above constitutes criminal acts by the individual Defendants, individually and through personal accountability for organizational conduct under Ohio Rev. Code § 2901.24, and through vicarious and organizational criminal liability under Ohio Rev. Code § 2901.23.

83. Individual Defendant Aaron Minc is an agent and employee of Minc LLC, acting on behalf of that company within the scope of his office or employment.

84. Acting on behalf of Minc LLC, within the scope of his office or employment, and with the kind of culpability required for the commission of the criminal offenses identified above, Aaron Minc authorized, requested, commanded, and tolerated Minc LLC's criminal conduct.

85. Aaron Minc is an agent and employee of Minc LLC as defined in Ohio Rev. §§ 2901.23 and 2901.24 and acted with the kind of culpability required for the commission of the offenses. At least one of the following applies:

   a. In the name of the organization or on its behalf, he engaged in conduct constituting the offense; and

   b. He had the primary responsibility to discharge a duty imposed on the organization by law—the duty not to recklessly share nude images of children—and did not discharge that duty.

86.     As a direct and proximate result of this unlawful conduct, R.M. has suffered and will continue to suffer economic and non-economic damages for which Defendants are liable, including, but not limited to, emotional distress; pain and suffering; loss of reputation; and the earnings.

87.     Defendants' acts were willful, egregious, malicious, and worthy of substantial sanction to punish and deter Defendants and others from engaging in this type of unlawful conduct.

## CLAIM 3
### WRONGFUL-INTRUSION INVASION OF PRIVACY
### AGAINST DEFENDANTS MAX MILLER AND AARON MINC

88.     Plaintiff incorporates all previous allegations.

89.     Wrongful intrusion type of invasion of privacy is defined as the wrongful intrusion into one's private activities in such a manner as to outrage or cause mental suffering, shame, or humiliation to a person of ordinary sensibilities.  The interest protected is primarily a mental one rather than economic or pecuniary. Actual damage is not necessary.

90.     By disclosing her intimate image to the world, Defendants wrongfully intruded upon and invaded R.M.'s privacy.

91.     As a direct and proximate result of this unlawful conduct, R.M. will suffer economic and non-economic damages for which Defendants are liable, including, but not limited to, emotional distress; pain and suffering; reputational harm; and the loss of earnings.

92.     Defendants' acts were willful, egregious, malicious, and worthy of substantial sanction to punish and deter Defendants and others from engaging in this type of unlawful conduct.

## CLAIM 4
### NEGLIGENCE
### AGAINST DEFENDANTS MAX MILLER, AARON MINC, AND MINC LLC

93.     Plaintiff incorporates all previous allegations.

94. Defendants failed to exercise the care that reasonably prudent people or organizations would exercise in a similar situation, resulting in injury.

95. They owed a duty of care to R.M.

96. They breached that duty.

97. The organizational defendant, Minc LLC, is vicariously liable for the negligence.

98. As a direct and proximate result of this unlawful conduct, R.M. will suffer economic and non-economic damages for which Defendants are liable, including, but not limited to, emotional distress; pain and suffering; reputational harm; and the loss of earnings.

99. Defendants' acts were willful, egregious, malicious, and worthy of substantial sanction to punish and deter Defendants and others from engaging in this type of unlawful conduct.

**CLAIM 5**
**CIVIL CONSPIRACY**
**AGAINST DEFENDANTS MAX MILLER, AARON MINC, AND MINC LLC**

100. Plaintiff incorporates all previous allegations.

101. Defendants civilly conspired with one another to commit the above legal violations.

102. As a direct and proximate result of this unlawful conduct, R.M. will suffer economic and non-economic damages for which Defendants are liable, including, but not limited to, emotional distress; pain and suffering; reputational harm; and the loss of earnings.

103. Defendants' acts were willful, egregious, malicious, and worthy of substantial sanction to punish and deter Defendants and others from engaging in this type of unlawful conduct.

**PRAYER FOR RELIEF**

For these reasons, Plaintiff respectfully requests the following relief from the Court:

1. Declare that Defendants' acts and conduct constitute violations of federal and Ohio law;

2. Enter judgment in R.M.'s favor as to all claims for relief;

3. Award R.M. full compensatory damages, economic and non-economic, including, but not limited to, damages for pain and suffering, mental anguish, emotional distress, humiliation, and inconvenience that R.M. is reasonably certain to suffer;

4. Award R.M. $150,000 in statutory, liquidated damages for every time someone accessed, transferred, distributed, published, or downloaded the image of R.M., which Defendants, by making the Dropbox folder available, enabled transfer and dissemination to third parties.

5. Award R.M. punitive damages for Defendants' intentional and malicious violations of federal and Ohio law;

6. Award prejudgment and post-judgment interest at the highest lawful rate;

7. Award R.M. her reasonable attorney fees (including expert fees) and all other costs of this suit;

8. Enjoin Defendants from further misconduct;

9. Award all other relief in law or equity to which R.M. is entitled and that the Court considers equitable, just, or proper.

Dated: August 12, 2026

Respectfully submitted,

THE CHANDRA LAW FIRM LLC

*/s/Subodh Chandra*
Subodh Chandra (0069233)
Emily Bohatch (0106217)
1265 West 6th Street, Suite 400
Cleveland, Ohio 44113-1326
888.500.5025 Phone
Subodh.Chandra@ChandraLaw.com
Emily Bohatch@ChandraLaw.com

*Attorneys for Plaintiff R.M. through her mother, Emily Moreno*