IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| R.M., A MINOR CHILD THROUGH HER MOTHER, EMILY MORENO, | CASE NO. 1:26-cv-01899-MJH |
| Plaintiff, | JUDGE MICHAEL J. HENDERSHOT |
| v. | MAGISTRATE JUDGE JENNIFER DOWDELL ARMSTRONG |
| MAX L. MILLER, *et al.*, | **DEFENDANT MAX L. MILLER'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6) AND R.C. §2747.02 (OHIO ANTI-SLAPP STATUTE);** |
| Defendants. | **REQUEST FOR ORAL HEARING** |

Defendant Max L. Miller, by and through undersigned counsel, respectfully moves this Court for an order: (1) pursuant to Fed. R. Civ. P. 12(b)(6), dismissing each claim asserted against him in Plaintiff's Complaint (Doc. #1) for failure to state a claim upon which relief can be granted; and (2) pursuant to Ohio's Uniform Public Expression Protection Act, Ohio Rev. Code 2747.01 *et seq*. ("UPEPA"), granting expedited relief dismissing with prejudice Plaintiff's state-law claims (Claims 2 through 5) and awarding Defendant Miller his reasonable attorney's fees, court costs, and other reasonable litigation expenses under Ohio Rev. Code 2747.05(A) against Emily Moreno, who brought this action as next friend, and not against the minor child R.M.

Defendant Miller further requests that the Court stay all other proceedings between Plaintiff and Defendant Miller pending resolution of this Motion, *see* Ohio Rev. Code 2747.03(A)(1), and set this Motion for oral hearing, *see* Ohio Rev. Code 2747.04(A)(1). The grounds for this Motion are set forth in the following Memorandum in Support.

## MEMORANDUM IN SUPPORT

## TABLE OF CONTENTS


TABLE OF AUTHORITIES .......... 3

I. STATEMENT OF THE ISSUES .......... 5

II. SUMMARY OF ARGUMENT .......... 5

III. STATEMENT OF ALLEGED FACTS .......... 6

IV. STANDARD OF DECISION .......... 8

V. LAW AND ARGUMENT .......... 9

A. Claim 1 Fails to State a Claim Under 15 U.S.C. § 6851 .......... 9

1. Plaintiff's own allegations place the disclosure within § 6851(b)(4)(C). .......... 9

2. Plaintiff does not plausibly allege that Defendant Miller knew the image was in the folder. .......... 10

3. At minimum, the "per download" damages theory fails as a matter of law. .......... 12

B. Claim 2 Fails to State a Claim Under Ohio Rev. Code 2307.60. .......... 12

1. The attempt, complicity, and conspiracy theories require a mental state Plaintiff pleads was absent. .......... 12

2. Plaintiff does not plausibly allege a violation of Ohio Rev. Code 2907.323(A)(2). .......... 13

C. Claim 3 Fails Because Plaintiff Alleges No Intrusion. .......... 14

D. Claim 4 Fails Because It Is a Threadbare Recital Seeking Damages Ohio Does Not Allow .......... 14

E. Claim 5 Fails Because Plaintiff Alleges No Malicious Combination and No Underlying Intentional Wrong. .......... 15

F. UPEPA Independently Requires Dismissal of Claims 2 Through 5 With Prejudice and an Award of Fees. .......... 16

1. UPEPA applies to Plaintiff's state-law claims in this Court. .......... 16

2. Claims 2 through 5 are based on Defendant Miller's exercise of free speech on a matter of public concern. .......... 16

3. No exception in Ohio Rev. Code 2747.01(C) applies. .......... 17

4. Claims 2 through 5 fail to state a claim and must be dismissed with prejudice, and fees must be awarded against the next friend. .......... 17

G. Alternatively, the Court Should Decline Supplemental Jurisdiction Over the State-Law Claims. .......... 18

VI. CONCLUSION .......... 18

LOCAL RULE 7.1(f) CERTIFICATION....................19
CERTIFICATE OF SERVICE....................19

# TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .......... 8, 14

*Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426 (6th Cir. 2008) .......... 8

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) .......... 8

*Berk v. Choy*, 607 U.S. 187 (2026) .......... 16

*Cates v. Crystal Clear Techs., LLC*, 874 F.3d 530 (6th Cir. 2017) .......... 8, 10

*Doe v. T.T.*, No. 2:24-CV-879-DAK-CMR, 2026 U.S. Dist. LEXIS 176128 (D. Utah Aug. 6, 2026) .......... 6, 11

*Doe v. X Corp.*, 821 F. Supp. 3d 632 (N.D. Tex. 2026) .......... 6, 11

*Feasby v. Logan*, 2023-Ohio-4478 (3d Dist.) .......... 14

*Heiner v. Moretuzzo*, 73 Ohio St.3d 80 (1995) .......... 15

*Housh v. Peth*, 165 Ohio St. 35 (1956) .......... 14

*Hunt v. City of Toledo Law Dep't*, 881 F. Supp. 2d 854 (N.D. Ohio 2012) .......... 15

*Jones v. Bock*, 549 U.S. 199 (2007) .......... 8

*Lee v. Countrywide Home Loans, Inc.*, 692 F.3d 442 (6th Cir. 2012) .......... 15

*Monitor Patriot Co. v. Roy*, 401 U.S. 265 (1971) .......... 9, 16, 17

*Morales v. Trans World Airlines, Inc.*, 504 U.S. 374 (1992) .......... 9

*Musson Theatrical, Inc. v. Fed. Express Corp.*, 89 F.3d 1244 (6th Cir. 1996) .......... 18

*Osborne v. Ohio*, 495 U.S. 103 (1990) .......... 13, 14

*Snyder v. Phelps*, 562 U.S. 443 (2011) .......... 9, 16, 17

*State v. Johnson*, 93 Ohio St.3d 240 (2001) .......... 12

*State v. Martin*, 149 Ohio St.3d 292, 2016-Ohio-7196 .......... 13

*State v. Young*, 37 Ohio St.3d 249 (1988) .......... 13

*Sullinger v. Sullinger*, 849 F. App'x 513 (6th Cir. 2021) .......... 14

*Vangheluwe v. Got News, LLC*, 365 F. Supp. 3d 836 (E.D. Mich. 2019) .......... 16

*Welling v. Weinfeld*, 113 Ohio St.3d 464, 2007-Ohio-2451 .......... 14

*Williams v. Aetna Fin. Co.*, 83 Ohio St.3d 464 (1998) .......... 15

*Williams v. CitiMortgage, Inc.*, 498 F. App'x 532 (6th Cir. 2012) .......... 8

**Statutes**

15 U.S.C. § 6851 .......... passim

28 U.S.C. § 1367 .......... 18

Pub. L. No. 117-103, div. W, tit. XIII, § 1309, 136 Stat. 49 (2022) .......... 11

Ohio Rev. Code 2307.12 ........ 6, 18
Ohio Rev. Code 2307.60 ........ 5, 6, 7, 12
Ohio Rev. Code 2747.01 ........ 1, 8, 16, 17
Ohio Rev. Code 2747.02 ........ 1
Ohio Rev. Code 2747.03 ........ 1
Ohio Rev. Code 2747.04 ........ passim
Ohio Rev. Code 2747.05 ........ 1, 6, 16, 18
Ohio Rev. Code 2747.06 ........ 8, 17
Ohio Rev. Code 2901.21 ........ 14
Ohio Rev. Code 2901.23, 2901.24 ........ 13
Ohio Rev. Code 2907.323 ........ 6, 8, 12, 13
Ohio Rev. Code 2921.03 ........ 13
Ohio Rev. Code 2923.01 ........ 12
Ohio Rev. Code 2923.02 ........ 12
Ohio Rev. Code 2923.03 ........ 12

**Rules**

Fed. R. Civ. P. 8 ........ 16
Fed. R. Civ. P. 10(c) ........ 8, 10
Fed. R. Civ. P. 12(b)(6) ........ 1, 16, 18
Fed. R. Civ. P. 17(c) ........ 18
N.D. Ohio LR 7.1(f) ........ 19

## I. STATEMENT OF THE ISSUES

1. Whether Claim 1 under 15 U.S.C. § 6851 fails where Plaintiff's own allegations place the challenged disclosure within the statute's exclusion for "a matter of public concern or public interest," § 6851(b)(4)(C), and plead that Defendant Miller did not review the folder he shared.

2. Whether Plaintiff's theory of "$150,000 . . . for each time her image was downloaded" fails as a matter of law under the plain text of § 6851(b)(3)(A)(i).

3. Whether Claims 2 through 5 (Ohio Rev. Code 2307.60, wrongful intrusion, negligence, and civil conspiracy) fail to state a claim.

4. Whether UPEPA requires dismissal of Claims 2 through 5 with prejudice and an award of fees against the next friend who brought this action, because those claims are based on Defendant Miller's exercise of free speech on a matter of public concern.

## II. SUMMARY OF ARGUMENT

Plaintiff's Complaint arises from a public livestream in which a sitting Member of Congress, in the midst of a reelection campaign, responded to widely publicized allegations that he had abused his former wife and his daughter, and then posted a link to documents he said rebutted those allegations. Plaintiff alleges that one page of one document in that folder—a page Plaintiff alleges Defendant Miller never reviewed, and that the email Plaintiff attaches confirms he did not know was there—contained an image of the parties' daughter. The inadvertent inclusion of that page, which co-Defendant Aaron Minc has publicly taken responsibility for, is regrettable. But it does not state a claim against Defendant Miller under any of the five theories pleaded.

*First*, Congress excluded from § 6851 any action "relating to . . . a matter of public concern or public interest." 15 U.S.C. § 6851(b)(4)(C). Plaintiff pleads that the folder was posted to rebut

public accusations of abuse against a congressman, that those accusations drew national attention, and that the image itself depicts the very shoulder injury that was the subject of those public accusations. Accordingly, Claim 1 of Plaintiff's Complaint fails. This claim also fails because Plaintiff’s allegations and exhibits show that Defendant Miller did not know the image was in the folder, and a person cannot knowingly or recklessly disregard a lack of consent to a disclosure he does not know he is making. Section 6851 is a civil remedy for the knowing or reckless nonconsensual dissemination of intimate images—what courts have called the “revenge porn statute.” *Doe v. X Corp.*, 821 F. Supp. 3d 632, 635 (N.D. Tex. 2026). It was not written to impose $150,000 in liquidated damages for a missed redaction in a document dump assembled by counsel. *See Doe v. T.T.*, No. 2:24-CV-879-DAK-CMR, 2026 U.S. Dist. LEXIS 176128, at *13 (D. Utah Aug. 6, 2026) (statute “was not intended to provide liquidated damages for any mistake made in such a business relationship”). At minimum, Plaintiff’s theory of $150,000 per download has no basis in the statute’s text.

*Second*, the state-law claims each fail on their own terms: the Ohio Rev. Code 2307.60 claim rests on attempt, complicity, and conspiracy theories that require a purpose, knowledge, or shared criminal intent that Plaintiff affirmatively pleads was absent, and on a construction of Ohio Rev. Code 2907.323(A)(2) the Supreme Court of Ohio has not adopted; the intrusion claim alleges no intrusion; the negligence claim is a threadbare recital seeking only emotional-distress damages Ohio does not permit in these circumstances; and the conspiracy claim alleges no malicious combination and no underlying intentional wrong.

*Third*, because Claims 2 through 5 are based on Defendant Miller’s exercise of free speech on a matter of public concern, and because they fail to state a claim, UPEPA requires their

dismissal with prejudice and an award of fees against Emily Moreno as next friend. Ohio Rev. Code 2747.04(C), 2747.05(A); *see also* Ohio Rev. Code 2307.12.

## III. STATEMENT OF ALLEGED FACTS

The following allegations are taken from the Complaint and its exhibits and are accepted as true solely for purposes of this Motion.

Defendant Miller is the U.S. Representative for Ohio's 7th Congressional District and is running for reelection in November 2026. (Compl. ¶¶ 14, 21.) He and Plaintiff's mother, Emily Moreno, divorced in June 2025 and share a daughter, R.M. (*Id.* ¶ 22.) Plaintiff alleges that the parties have been "embroiled in an unfortunately public custody dispute," that Defendant Miller "has also been accused of abusing at least three women, including Ms. Moreno, and of abusing R.M.," and that those allegations have garnered "national and international attention" such that "eyes from all over the nation and world were on him." (*Id.* ¶¶ 23, 25, 29.) The Politico article Plaintiff attaches reports that the allegations against Defendant Miller include "breaking his daughter's collarbone." (Doc. #1-11, PageID #54.)

On August 2, 2026, Defendant Miller hosted a public livestream on his X.com account in which he "argued against allegations that he abused Ms. Moreno and R.M." and said he would post a link to "evidence" he claimed exonerated him. (Compl. ¶¶ 27, 30.) He then posted a link to a Dropbox folder, owned by his counsel, co-Defendant Aaron Minc, containing police reports, recorded conversations, and court documents organized by topic. (*Id.* ¶¶ 31, 39–40.) One subfolder contained a PDF of messages exchanged between Ms. Moreno and Defendant Miller on OurFamilyWizard, "a parenting app that the domestic-relations court had ordered the pair to use to communicate." (*Id.* ¶ 41.) Plaintiff alleges that page 53 of that PDF contained an image of R.M. that "shows a large, yellow bruise on R.M.'s shoulders, an image taken after the child was in

Miller's custody," and that "[s]he was diagnosed with a broken collarbone." (*Id.* ¶¶ 42, 44.) Plaintiff further alleges that the image depicts R.M. unclothed. (*Id.* ¶ 43.)

Plaintiff alleges that Mr. Minc assembled and redacted the folder, that he admitted responsibility for "reviewing, adding, deciding, or making any changes to the information that was in this folder," and that, when the folder's contents were deleted by members of the public, he restored "a pre-redaction, unedited version of the document." (*Id.* ¶¶ 36–37, 52–57.) Mr. Minc's email, which Plaintiff attaches, states: "Max Miller did not know." (Doc. #1-3, PageID #28.) Plaintiff likewise alleges that Defendant Miller shared the link "without instructions to remove the intimate image, or even checking," and "recklessly failed to review the folder he shared." (Compl. ¶ 59.)

Plaintiff asserts five claims against Defendant Miller: (1) violation of 15 U.S.C. § 6851; (2) civil liability for criminal acts under Ohio Rev. Code 2307.60, premised on Ohio Rev. Code 2907.323(A)(2), attempt, and complicity; (3) wrongful-intrusion invasion of privacy; (4) negligence; and (5) civil conspiracy. (*Id.* ¶¶ 66–103.) Plaintiff seeks, among other relief, "$150,000 in statutory, liquidated damages for every time someone accessed, transferred, distributed, published, or downloaded the image of R.M." (*Id.* at 20, Prayer ¶ 4.)

## IV. STANDARD OF DECISION

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* The Court may consider "the Complaint and any exhibits attached thereto, public records, [and] items appearing in the record of the case." *Bassett v. Nat'l Collegiate Athletic Ass'n*,

528 F.3d 426, 430 (6th Cir. 2008); *see also* Fed. R. Civ. P. 10(c) (a copy of a written instrument attached to a pleading "is a part of the pleading for all purposes"). And "[w]hen a written instrument contradicts allegations in the complaint to which it is attached, the exhibit trumps the allegations." *Cates v. Crystal Clear Techs., LLC*, 874 F.3d 530, 536 (6th Cir. 2017) (quoting *Williams v. CitiMortgage, Inc.*, 498 F. App'x 532, 536 (6th Cir. 2012)). An affirmative defense or statutory exclusion supports dismissal where "the allegations in the complaint suffice to establish that ground." *Jones v. Bock*, 549 U.S. 199, 215 (2007).

Under UPEPA, the Court "shall dismiss with prejudice a cause of action" where (1) the movant establishes that it is based on a communication or action described in Ohio Rev. Code 2747.01(B); (2) the responding party fails to establish that an exception in Ohio Rev. Code 2747.01(C) applies; and (3) the responding party fails to establish a prima facie case, or the movant establishes that "[t]he responding party failed to state a cause of action upon which relief can be granted." Ohio Rev. Code 2747.04(C). The General Assembly directed that UPEPA be "broadly construe[d] and appl[ied]," Ohio Rev. Code 2747.06(B), and intended it "to confer substantive immunity from suit, and not merely immunity from liability." Ohio Rev. Code 2747.01(E).

## V. LAW AND ARGUMENT

### A. Claim 1 Fails to State a Claim Under 15 U.S.C. § 6851.

#### 1. Plaintiff's own allegations place the disclosure within § 6851(b)(4)(C).

Section 6851 provides that an identifiable individual "may not bring an action for relief under this section relating to . . . a matter of public concern or public interest." 15 U.S.C. § 6851(b)(4)(C). Congress did not limit this exclusion to disclosures made in good faith (as it did in subparagraph (B)), nor did it require that the image itself be the subject of public debate; it barred any action "relating to" a matter of public concern. The ordinary meaning of "relating to" is "a

broad one—'to stand in some relation; to have bearing or concern; to pertain; refer; to bring into association with or connection with.'" *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 383 (1992) (citation omitted). Plaintiff's Complaint addresses only the good-faith exceptions in § 6851(b)(4)(B) (Compl. ¶ 50) and says nothing about the subparagraph (C) exclusion.

Plaintiff's own allegations establish application of the exclusion. Speech "deals with matters of public concern when it can 'be fairly considered as relating to any matter of political, social, or other concern to the community,' or when it 'is a subject of legitimate news interest.'" *Snyder v. Phelps*, 562 U.S. 443, 453 (2011) (citations omitted). With respect to a candidate for office, "anything which might touch on an official's fitness for office is relevant," and a candidate's "qualities as a husband or father" are not of "purely private" concern. *Monitor Patriot Co. v. Roy*, 401 U.S. 265, 273–74 (1971). Plaintiff alleges that a sitting congressman, months before his reelection, was publicly accused of abusing his former wife and his daughter; that those accusations drew "national and international attention"; that the folder was posted during a livestream in which he responded to those accusations; and that the folder consisted of police reports, recorded conversations, and court documents offered as "evidence" in his defense. (Compl. ¶¶ 21, 25, 27–31, 39.) More specifically still, Plaintiff alleges that the image at issue documents the bruising associated with R.M.'s broken collarbone—the very injury that the public accusations against Defendant Miller concern. (*Id.* ¶ 44; Doc. #1-11, PageID #54.) An action premised on the disclosure of that document, in that forum, for that purpose, is an action "relating to . . . a matter of public concern or public interest." 15 U.S.C. § 6851(b)(4)(C).[1] Claim 1 is therefore barred and should be dismissed.

[1]Defendant Miller does not concede that the image satisfies the definition of an "intimate visual depiction" in 15 U.S.C. § 6851(a)(5), a matter that is disputed. (*See* Doc. #1-11, PageID #54.)

**2. Plaintiff does not plausibly allege that Defendant Miller knew the image was in the folder.**

Section 6851 reaches a disclosure "made by a person who knows that, or recklessly disregards whether, the individual has not consented to such disclosure." 15 U.S.C. § 6851(b)(1)(A). The mental state attaches to "such disclosure"—the disclosure of the intimate visual depiction. A person cannot know, or consciously disregard, that someone has not consented to a disclosure he does not know he is making. Plaintiff's allegations describe exactly that circumstance: Defendant Miller shared the link "without . . . even checking" and "recklessly failed to review the folder he shared" (Compl. ¶ 59)—a label that attaches to the failure to review, not to any awareness of the image or of a lack of consent; Mr. Minc admitted responsibility for "reviewing, adding, deciding, or making any changes to the information that was in this folder" (*id.* ¶ 57); the image appeared because Mr. Minc restored a "pre-redaction" version (*id.* ¶ 52); and Mr. Minc's email, attached to the Complaint, states that "Max Miller did not know" (Doc. #1-3, PageID #28). At most, Plaintiff alleges that Defendant Miller should have reviewed the contents of a folder his counsel prepared. That is an allegation of carelessness, not of knowing or reckless disregard of a lack of consent to a disclosure of which he was unaware.

Plaintiff's conclusory assertion that Defendant Miller "gave Minc the intimate image to distribute" (Compl. ¶ 58) is contradicted by her own specific allegations (Compl. ¶¶ 52–57, 59) and by the email she attached to her Complaint, which states that "Max Miller did not know." (Doc. #1-3, PageID #28.) That exhibit is part of the Complaint, Fed. R. Civ. P. 10(c), and where it contradicts Plaintiff's conclusory allegation, the exhibit controls. *See Cates*, 874 F.3d at 536. A client's transmittal of documents to his own litigation counsel is not a public disclosure and falls within the exclusion for disclosures made in good faith "as part of a legal proceeding." 15 U.S.C. § 6851(b)(4)(B)(ii); *see* Compl. ¶¶ 15, 24. Nor does § 6851 create respondeat superior liability for

a client based on counsel's alleged drafting error. The statute authorizes suit against "that person" who made the disclosure with the required mental state. 15 U.S.C. § 6851(b)(1)(A). Plaintiff's allegation that Mr. Minc acted as Defendant Miller's agent (Compl. ¶ 15) cannot supply a mental state the Complaint and Exhibit 2 negate as to Defendant Miller himself.

*Doe v. T.T.* illustrates the point. No. 2:24-CV-879-DAK-CMR, 2026 U.S. Dist. LEXIS 176128 (D. Utah Aug. 6, 2026). There, as here, the claim arose from a mistake: the defendants mistakenly posted a photograph that included the plaintiff's face alongside nude images, and then took the posting down. *Id.* at *5–6, *10. Although the facts of *Doe* differ from those alleged here, the court's conclusion about the reach of § 6851 applies with equal force. The court did "not think that the statute is intended to be applied in this manner," explained that the statute "was not intended to provide liquidated damages for any mistake made in such a business relationship," and held that "[t]he mistakes in posting or delay in removing the photographs may be a contractual dispute between the parties, but it is not a § 6851 claim." *Id.* at *10, *13. The court applied the statute's exceptions to keep that mistake outside § 6851, observing that the dispute "falls within the exceptions in § 6851(b)(4) and is exactly why the exceptions exist." *Id.* at *13. So too here. Congress enacted § 6851 in the Violence Against Women Reauthorization Act of 2022 to give individuals a remedy against the knowing or reckless disclosure of their intimate images without consent. Pub. L. No. 117-103, div. W, tit. XIII, § 1309, 136 Stat. 49, 929 (2022); 15 U.S.C. § 6851(b)(1)(A). It is, as one court put it, the "revenge porn statute." *Doe v. X Corp.*, 821 F. Supp. 3d 632, 635 (N.D. Tex. 2026). It was not designed to convert an inadvertent page in a counsel-prepared folder—posted in response to nationally reported accusations, and removed when discovered—into a $150,000-per-download claim against a speaker who, on Plaintiff's own

exhibit, "did not know." *See* Compl. ¶ 52; Doc. #1-3, PageID #28. Claim 1 should be dismissed for this reason as well.

#### 3. At minimum, the "per download" damages theory fails as a matter of law.

Plaintiff alleges that § 6851 provides "liquidated damages of $150,000 for each disclosure" and seeks $150,000 "for every time someone accessed, transferred, distributed, published, or downloaded the image of R.M." (Compl. ¶¶ 10, 65, 67, 70; *id.* at 20, Prayer ¶ 4.) The statute says no such thing. It provides that an individual "may recover the actual damages sustained by the individual *or liquidated damages in the amount of $150,000*." 15 U.S.C. § 6851(b)(3)(A)(i) (emphasis added). The words "for each disclosure," which Plaintiff attributes to the statute (Compl. ¶ 67), do not appear in it. Nor does the statute make a defendant liable for a third party's act of "access[ing]" or "download[ing]" an image; liability runs against "the person" who made the disclosure. 15 U.S.C. § 6851(b)(1)(A). The statute also does not authorize punitive damages, which the Prayer seeks on the federal claim. (Compl. at 20, Prayer ¶ 5.) If any portion of Claim 1 survives, the Court should dismiss the claim to the extent it seeks liquidated damages on a per-download or per-access basis and to the extent it seeks punitive damages under § 6851.

### B. Claim 2 Fails to State a Claim Under Ohio Rev. Code 2307.60.

Section 2307.60(A)(1) permits a civil action by one "injured in person or property by a criminal act." Plaintiff predicates the claim on Ohio Rev. Code 2907.323(A)(2), "combined with" attempt (Ohio Rev. Code 2923.02) and complicity (Ohio Rev. Code 2923.03). (Compl. ¶¶ 72–85.) Each theory fails.

#### 1. The attempt, complicity, and conspiracy theories require a mental state Plaintiff pleads was absent.

Attempt requires that the defendant act "purposely or knowingly." Ohio Rev. Code 2923.02(A). Complicity by aiding and abetting requires proof that the defendant "shared the

criminal intent of the principal." *State v. Johnson*, 93 Ohio St.3d 240, 245 (2001). And complicity by conspiracy incorporates Ohio Rev. Code 2923.01 (*see* Ohio Rev. Code 2923.03(A)(3)), which requires a "purpose to commit or to promote or facilitate" one of an enumerated list of offenses that does not include Ohio Rev. Code 2907.323. Ohio Rev. Code 2923.01(A). Plaintiff pleads that Defendant Miller did not review the folder, and the email she attaches states that he "did not know." (Compl. ¶ 59; Doc. #1-3, PageID #28.) Those allegations foreclose any plausible inference of purpose, knowledge, or shared criminal intent. Plaintiff's citation of Ohio Rev. Code 2921.03(A)(4) as a "complicity" provision (Compl. ¶ 80) is misplaced; that section defines the offense of intimidation. And the organizational-liability provisions Plaintiff invokes, Ohio Rev. Code 2901.23 and 2901.24 (Compl. ¶ 82), concern organizations and their agents and have no application to Defendant Miller individually. Plaintiff therefore fails to plead a criminal act on any theory of attempt, complicity, or conspiracy, and Claim 2 should be dismissed.

**2. Plaintiff does not plausibly allege a violation of Ohio Rev. Code 2907.323(A)(2).**

Section 2907.323(A)(2) addresses a parent's use or transfer of material depicting "the person's child or ward" in a state of nudity. The Supreme Court of Ohio has construed the parallel possession provision, division (A)(3), to reach only nudity that "constitutes a lewd exhibition or involves a graphic focus on the genitals," *State v. Young*, 37 Ohio St.3d 249, 252 (1988), and the United States Supreme Court upheld the statute only as so construed, explaining that the construction avoided penalizing "innocuous photographs of naked children." *Osborne v. Ohio*, 495 U.S. 103, 113–14 (1990). In *State v. Martin*, 149 Ohio St.3d 292, 2016-Ohio-7196, ¶¶ 15–17, the court declined to apply *Young* to division (A)(1), reasoning that the *creation* of child-nudity material by a non-parent warrants less protection than possession. The Supreme Court of Ohio has not held that the broader statutory definition applies to a parent's "use or transfer" under division

(A)(2), and the First Amendment concerns that drove *Young* and *Osborne* apply with full force to a parent's use of an existing family photograph. Under the *Young* construction, Plaintiff's claim fails on her own allegations: she pleads that the photograph documents a bruise on R.M.'s shoulders associated with a broken collarbone (Compl. ¶ 44), not a lewd exhibition or a graphic focus on the genitals. Moreover, every act division (A)(2) prohibits—to "[c]onsent to the photographing of" one's child in a state of nudity, to "photograph" the child in that state, to "consent to the use of" the child in such material, or to "use or transfer a material . . . of that nature"—presupposes some awareness of what the material depicts. Ohio Rev. Code 2907.323(A)(2). Plaintiff relies on the "use or transfer" clause (Compl. ¶ 75), which requires, at minimum, recklessness as to the nature of the material, *see Osborne*, 495 U.S. at 115; Ohio Rev. Code 2901.21(C)(1). And a parent cannot "consent to the use of" his child in material he does not know contains her image. On Plaintiff's own allegations, Defendant Miller did not review the folder, and the exhibit she attaches states that he "did not know" the image was there. (Compl. ¶ 59; Doc. #1-3, PageID #28.) Plaintiff therefore does not plausibly allege that Defendant Miller consented to, used, or transferred nude material of his daughter with any culpable mental state, and Claim 2 should be dismissed.

### C. Claim 3 Fails Because Plaintiff Alleges No Intrusion.

Plaintiff pleads the intrusion form of invasion of privacy: "the wrongful intrusion into one's private activities in such a manner as to outrage or cause mental suffering, shame or humiliation to a person of ordinary sensibilities." *Welling v. Weinfeld*, 113 Ohio St.3d 464, 2007-Ohio-2451, ¶ 15 (quoting *Housh v. Peth*, 165 Ohio St. 35 (1956), paragraph two of the syllabus); *see* Compl. ¶ 89. To plead intrusion, "at a minimum, there must be allegations demonstrating an intrusion, physical or otherwise, into another's solitude or private affairs." *Feasby v. Logan*, 2023-Ohio-

4478, ¶ 14 (3d Dist.); *see also Sullinger v. Sullinger*, 849 F. App'x 513, 522 (6th Cir. 2021) (plaintiff must allege that defendant "wrongful[ly] intru[ded] into" plaintiff's "private activities"). Plaintiff alleges no intrusion of any kind. She alleges that the image was contained in the parties' own court-ordered co-parenting communications (Compl. ¶ 41)—material Defendant Miller, as R.M.'s father, lawfully received. The Complaint does not allege that Defendant Miller entered any private place, pried into any private affair, or obtained anything he was not entitled to have. Absent any intrusion, Claim 3 fails and should be dismissed.

### D. Claim 4 Fails Because It Is a Threadbare Recital Seeking Damages Ohio Does Not Allow.

Plaintiff's negligence claim consists of three sentences: Defendants "failed to exercise the care that reasonably prudent people . . . would exercise," "owed a duty of care to R.M.," and "breached that duty." (Compl. ¶¶ 94–96.) These are the "[t]hreadbare recitals of the elements of a cause of action" that "do not suffice." *Iqbal*, 556 U.S. at 678. The claim identifies no source or scope of duty and no act by Defendant Miller other than sharing a link to a folder his counsel prepared.

The claim also fails because the only injuries alleged are "emotional distress; pain and suffering; reputational harm; and the loss of earnings" of a two-year-old child. (Compl. ¶ 98.) Ohio limits recovery for negligently inflicted emotional distress to cases in which the plaintiff "has either witnessed or experienced a dangerous accident or appreciated the actual physical peril." *Heiner v. Moretuzzo*, 73 Ohio St.3d 80, 86–87 (1995). Plaintiff alleges no physical injury or physical peril caused by the alleged negligence, and her allegation of lost earnings is not plausible on its face. The negligence claim should be dismissed.

### E. Claim 5 Fails Because Plaintiff Alleges No Malicious Combination and No Underlying Intentional Wrong.

Civil conspiracy is "a malicious combination of two or more persons to injure another in person or property, in a way not competent for one alone, resulting in actual damages," and "[a]n underlying unlawful act is required before a civil conspiracy claim can succeed." *Williams v. Aetna Fin. Co.*, 83 Ohio St.3d 464, 475 (1998) (citations omitted). "A plaintiff need not demonstrate an explicit agreement but only an understanding or common design between the parties to commit an improper act." *Lee v. Countrywide Home Loans, Inc.*, 692 F.3d 442, 446 (6th Cir. 2012). Because conspiracy requires both intent and agreement, "there can be no negligent conspiracy or, conversely, conspiracy to commit negligence." *Hunt v. City of Toledo Law Dep't*, 881 F. Supp. 2d 854, 880 (N.D. Ohio 2012).

Plaintiff's conspiracy claim is a single conclusory sentence: "Defendants civilly conspired with one another to commit the above legal violations." (Compl. ¶ 101.) Her factual allegations describe the opposite of a common design to disclose the image: Mr. Minc redacted the files, restored a pre-redaction version under time pressure, and missed the page, while Defendant Miller never reviewed the folder. (*Id.* ¶¶ 52–55, 59; Doc. #1-3, PageID #28.) An agreement to publish a folder of documents rebutting public accusations is not an agreement to commit an unlawful act, and Plaintiff's underlying claims fail for the reasons stated above. Claim 5 should be dismissed.

### F. UPEPA Independently Requires Dismissal of Claims 2 Through 5 With Prejudice and an Award of Fees.

#### 1. UPEPA applies to Plaintiff's state-law claims in this Court.

Plaintiff's state-law claims are before this Court under supplemental jurisdiction. (Compl. ¶ 18.) Defendant Miller invokes UPEPA only as to those claims. The General Assembly enacted UPEPA to "confer substantive immunity from suit," Ohio Rev. Code 2747.01(E), and to mandate

fee-shifting where a motion is granted, Ohio Rev. Code 2747.05(A)—substantive rights that attach to the state-law claims themselves. Defendant Miller is aware of no controlling Sixth Circuit decision on whether a state anti-SLAPP statute applies in federal court. He recognizes that *Berk v. Choy*, 607 U.S. 187 (2026), held that a state statute requiring a plaintiff to file an expert affidavit of merit with a medical-malpractice complaint does not apply in federal court because it conflicts with the Federal Rules of Civil Procedure. This Motion does not implicate that concern. Defendant Miller does not ask the Court to impose any evidentiary burden on Plaintiff beyond what Rules 8 and 12 require. He relies on the prong of UPEPA that directs dismissal where "[t]he responding party failed to state a cause of action upon which relief can be granted," Ohio Rev. Code 2747.04(C)(3)(a)—the same inquiry the Court conducts under Rule 12(b)(6). *Cf. Vangheluwe v. Got News, LLC*, 365 F. Supp. 3d 836 (E.D. Mich. 2019) (applying Rule 12(b)(6) standards to an anti-SLAPP motion that challenged the legal sufficiency of a claim). Applying UPEPA's substantive immunity and fee provisions on that basis requires no departure from the Federal Rules.

Independently of UPEPA, the First Amendment bars the state-law claims for the reasons stated in Part A.1. *Snyder*, 562 U.S. at 453; *Monitor Patriot*, 401 U.S. at 273–74. That ground does not depend on whether UPEPA applies in federal court.

**2. Claims 2 through 5 are based on Defendant Miller's exercise of free speech on a matter of public concern.**

UPEPA applies to a claim "based on . . . [t]he person's exercise of the right of freedom of speech . . . guaranteed by the United States Constitution or the Ohio Constitution, on a matter of public concern." Ohio Rev. Code 2747.01(B)(3). It also applies to a claim based on "[t]he person's communication on an issue under consideration or review in a legislative, executive, judicial, administrative, or other governmental proceeding." Ohio Rev. Code 2747.01(B)(2). Every state-

law claim is based on the same conduct: Defendant Miller's livestream and his posts linking to documents he offered in response to public accusations that were simultaneously the subject of pending domestic-relations and defamation proceedings. (Compl. ¶¶ 24–38, 59, 90, 94–96, 101.) For the reasons stated in Part A.1, a sitting congressman's public response, during a reelection campaign, to nationally reported accusations that he abused his former wife and child is speech on a matter of public concern. *Snyder*, 562 U.S. at 453; *Monitor Patriot*, 401 U.S. at 273–74. Plaintiff pleads that the speech occurred while "eyes from all over the nation and world were on him." (Compl. ¶ 29.) That the claims target the contents of the materials Defendant Miller shared, rather than the words he spoke, does not remove them from UPEPA's scope, which the Court must "broadly construe and apply." Ohio Rev. Code 2747.06(B).

**3. No exception in Ohio Rev. Code 2747.01(C) applies.**

Plaintiff bears the burden to establish an exception. Ohio Rev. Code 2747.04(C)(2). None applies. This is not an action against a governmental unit or an employee "acting or purporting to act in an official capacity"; Plaintiff sues Defendant Miller for statements made in a personal family dispute and describes the materials as having been "produced by my personal attorneys and paid for by me directly." (Compl. ¶¶ 22–27, 34.) Ohio Rev. Code 2747.01(C)(1). It is not an enforcement action brought by a governmental unit, Ohio Rev. Code 2747.01(C)(2); it does not arise from the sale or lease of goods or services, Ohio Rev. Code 2747.01(C)(3); and it does not seek recovery for bodily injury or wrongful death, Ohio Rev. Code 2747.01(C)(4). Plaintiff alleges only emotional, reputational, and economic harm. (Compl. ¶¶ 86, 91, 98, 102.)

**4. Claims 2 through 5 fail to state a claim and must be dismissed with prejudice, and fees must be awarded against the next friend.**

For the reasons stated in Parts B through E, Plaintiff "failed to state a cause of action upon which relief can be granted" on Claims 2 through 5. Ohio Rev. Code 2747.04(C)(3)(a). The Court

therefore "shall dismiss [them] with prejudice," Ohio Rev. Code 2747.04(C), and "shall award reasonable attorney's fees, court costs, and other reasonable litigation expenses to the moving party." Ohio Rev. Code 2747.05(A).

That award should run against Emily Moreno, who filed and is prosecuting this action as next friend, and not against R.M. Ohio makes the next friend "liable for the costs of the action brought by" her. Ohio Rev. Code 2307.12; *see also* Fed. R. Civ. P. 17(c). UPEPA's fee-shifting provision is a mandatory consequence of a granted motion for expedited relief. Assessing that award against a two-year-old child who did not choose to sue would be inconsistent with both Ohio next-friend practice and the statute's purpose. Defendant Miller requests leave to submit an application for fees and expenses as to Ms. Moreno within thirty days of the Court's ruling.

### G. Alternatively, the Court Should Decline Supplemental Jurisdiction Over the State-Law Claims.

If the Court dismisses Claim 1 but declines to reach the merits of Claims 2 through 5 under Rule 12(b)(6) or UPEPA, it should decline supplemental jurisdiction over them. 28 U.S.C. § 1367(c)(3). "When all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims." *Musson Theatrical, Inc. v. Fed. Express Corp.*, 89 F.3d 1244, 1254–55 (6th Cir. 1996).

## VI. CONCLUSION

For the foregoing reasons, Defendant Max L. Miller respectfully requests that the Court (1) dismiss Claim 1 as to him for failure to state a claim or, at minimum, dismiss it to the extent it seeks per-download or per-access liquidated damages or punitive damages under 15 U.S.C. § 6851; (2) dismiss Claims 2 through 5 as to him with prejudice pursuant to Fed. R. Civ. P. 12(b)(6) and Ohio Rev. Code 2747.04(C); (3) award him his reasonable attorney's fees, court costs, and

other reasonable litigation expenses pursuant to Ohio Rev. Code 2747.05(A) against Emily Moreno as next friend, and not against R.M.; (4) stay all other proceedings between Plaintiff and Defendant Miller pending resolution of this Motion; and (5) set this Motion for oral hearing.

Respectfully submitted,

*/s/ Larry W. Zukerman*
LARRY W. ZUKERMAN (0029498)
S. MICHAEL LEAR (0041544)
ADAM M. BROWN (0092209)
ZUKERMAN, LEAR, MURRAY & BROWN CO., L.P.A.
3912 Prospect Avenue, East
Cleveland, Ohio 44115
Telephone: (216) 696-0900
Facsimile: (216) 696-8800
lwz@zukerman-law.com
sml@zukerman-law.com
amb@zukerman-law.com

*Counsel for Defendant Max L. Miller*

**LOCAL RULE 7.1(f) CERTIFICATION**

Undersigned counsel certifies that this case has not yet been assigned to a case management track and that the foregoing Memorandum in Support adheres to the twenty (20) page limitation that N.D. Ohio LR 7.1(f) prescribes for memoranda relating to dispositive motions in unassigned cases.

*/s/ Larry W. Zukerman*
Attorney for Defendant
Max L. Miller

## CERTIFICATE OF SERVICE

I hereby certify that on October 1, 2026, the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system, including counsel for Plaintiff, Subodh Chandra and Emily Bohatch. Parties may access this filing through the Court's system.

I further certify that a copy was served by email upon self-identified counsel for Defendants Aaron Minc and Minc LLC, who have not yet entered an appearance in this action: Marc J. Randazza (mjr@randazza.com) and Jay M. Wolman (jmw@randazza.com).

*/s/ Larry W. Zukerman*
Attorney for Defendant
Max L. Miller