**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| R.M., a Minor Child Through Her Mother, EMILY MORENO,<br><br>Plaintiff,<br><br>v.<br><br>MAX L. MILLER, AARON MINC, and MINC LLC,<br><br>Defendants. | Case No. 1:26-cv-01899<br><br>District Judge Michael J. Hendershot<br><br>REQUEST FOR ORAL HEARING |

**DEFENDANTS AARON MINC AND MINC LLC'S ANTI-SLAPP MOTION TO DISMISS**

This is a SLAPP suit by Emily Moreno against Defendants on account of their speech on a matter of public concern. There was no violation of any law nor of any of R.M.'s rights; rather, Moreno is abusing her daughter's name in a quest for vengeance against her ex-husband and in an attempt to harm his counsel for a perceived tactical advantage. Defendants Aaron Minc and Minc LLC ("Minc") respectfully move this Honorable Court for an order: (1) pursuant to Fed. R. Civ. P. 12(b)(6), dismissing all claims asserted against them in this matter and in Plaintiff's Complaint (ECF No. 1); and (2) declaring per Ohio's Uniform Public Expression Protection Act, Ohio Rev. Code § 2747.01 et seq. ("UPEPA"), that Minc is immune from suit as to the state law claims and entitled to reasonable attorneys' fees, court costs, and other compensable expenses, from Emily Moreno (not R.M.). When applying UPEPA, the Court should only apply the substantive rights of immunity from suit and a right to fees, not any of the procedural aspects of UPEPA. The grounds for this motion are set forth in the following Memorandum in Support.

# TABLE OF CONTENTS

STATEMENT OF THE ISSUES TO BE DECIDED .......... 8
SUMMARY OF THE ARGUMENT .......... 8
MEMORANDUM OF LAW .......... 10
1.0 FACTUAL BACKGROUND .......... 10
2.0 LEGAL STANDARD .......... 12
3.0 ANALYSIS .......... 12
3.1 Federal Law is Inapplicable to an Innocuous Image Shared with Consent .......... 13
3.2 Minc is Not Liable under Ohio Rev. Code § 2307.60(A)(1) as there were No Criminal Acts .......... 16
3.3 Moreno is the Only Person Invading R.M.'s Privacy .......... 20
3.4 Minc was Not Negligent .......... 22
3.5 The Civil Conspiracy Claim Lacks Merit .......... 23
3.6 The State Law Claims Fail Under the Fair Report Privilege .......... 24
3.7 Minc is Immune from Suit and is Entitled to Fees Against Moreno .......... 25
4.0 CONCLUSION .......... 29
CERTIFICATION PURSUANT TO LOCAL RULE 7.1(f) .......... 31
CERTIFICATE OF SERVICE .......... 32

# TABLE OF AUTHORITIES

## CASES


*Anderson v. Celebrezze*,
460 U.S. 780 (1983)........ 18

*Anthony v. Wonnell*,
1992 Ohio App. LEXIS 1950 (Ct. App. Apr. 7, 1992)........ 21

*Apex Bank v. Rainsford*,
2022 U.S. App. LEXIS 32277 (6th Cir. Nov. 22, 2022)........ 26

*Arnoff v. PAJ Enters., LLC*,
2022-Ohio-1759 (Ct. App.)........ 23

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)........ 12

*Ass'n of Cleveland Fire Fighters v. City of Cleveland,*
502 F.3d 545 (6th Cir. 2007)........ 12

*Atkins v. Brown*,
No. CV-25- 125167 (Cuyahoga Comm. Pleas Feb. 2, 2026) (Gallagher, J. S.)........ 27

*Bar Processing Corp. v. Barnes*,
2022 U.S. App. LEXIS 11705 (6th Cir. Apr. 28, 2022........ 23

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007)........ 12

*Bennett v. Metro. Gov't of Nashville & Davidson Cty.*,
977 F.3d 530 (6th Cir. 2020)........ 16

*Cesario v. Chesapeake Appalachia, L.L.C.,*
2013 U.S. Dist. LEXIS 199831 (S.D. Ohio May 14, 2013)........ 14

*Chesher v. Neyer*,
477 F.3d 784 (6th Cir. 2007........ 26

*Colbert v. Reed*,
2026 U.S. Dist. LEXIS 221342 (E.D. Mich. Sep. 29, 2026)........ 13

*Commercial Money Ctr., Inc. v. Ill. Union Ins. Co.*,
508 F.3d 327 (6th Cir. 2007)........ 21

*Conley v. Gibson*,
355 U.S. 41 (1957) ..................... 12

*Connick v. Myers*,
461 U.S. 138 (1983) ..................... 28

*Damon's Mo., Inc. v. Davis*,
63 Ohio St. 3d 605 (1992) ..................... 14

*Doe v. T.T.*,
2026 U.S. Dist. LEXIS 176128 (D. Utah Aug. 6, 2026) ..................... 15

*Elden v. Nirvana, L.L.C.*,
802 F. Supp. 3d 1211 (C.D. Cal. 2025) ..................... 16, 22

*Florists' Mut. Ins. Co. as. Subrogee of Mastronardi Produce USA, Inc. v. Mt. High Greenhouse Constr., LLC*,
2026 U.S. Dist. LEXIS 170446 (N.D. Ohio July 31, 2026) ..................... 22

*Gosden v. Louis*,
116 Ohio App. 3d 195 (9th Dist. 1996) ..................... 24

*Heiner v. Moretuzzo*,
73 Ohio St.3d 80 (1995) ..................... 23

*Holmes v. Landings at Becket Ridge Hills Props., LLC*,
2026 U.S. Dist. LEXIS 77052 (S.D. Ohio Apr. 8, 2026) ..................... 21

*Hrivnak v. NCO Portfolio*,
994 F. Supp. 2d 889 (N.D. Ohio 2014) ..................... 24

*Jacobs v. Frank*,
60 Ohio St.3d 111 (1991) ..................... 24

*Jones v. City of Elyria*,
947 F.3d 905 (6th Cir. 2020) ..................... 26

*Kenty v. Transamerica Prem. Ins.* (1995),
72 Ohio St. 3d 415 ..................... 23

*LaBarge v. Werner Enters.*,
2008 U.S. Dist. LEXIS 116521 (S.D. Ohio July 10, 2008) ..................... 24

*Lawrence v. Gilby's Pizza Craven LLC,*
2026-Ohio-1797 (Ct. App.) ..................... 27

*M.G. v. Bainbridge Island Sch. Dist. #303*,
566 P.3d 132 (Wash. Ct. App. 2025) ........................................................................ 28

*Mackey v. Krause*,
No. 20240785, 2025 WL 24800059 (Utah Aug. 28, 2025)...................................................... 28

*Marquardt v. Carlton*,
971 F.3d 546 (6th Cir. 2020) ................................................................................ 15, 16

*Miller v. Moreno,*
Case No. DR 24 401120 (Cuyahoga Cty., Oh., Common Pleas, Jan. 15, 2025) ...................... 14

*Monitor Patriot Co. v. Roy*,
401 U.S. 265 (1971)................................................................................................ 27

*N.Y. Times v. Sullivan*,
376 U.S. 254 (1964) (Black, J., concurring) .................................................................. 28

*Ohio Vestibular & Balance Ctrs., Inc. v. Wheeler*,
2013-Ohio-4417, 999 N.E.2d 241 (Ct. App.) ................................................................ 24

*Oldnar Corp. v. Sanyo N. Am. Corp*.,
2026 U.S. App. LEXIS 13835 (6th Cir. May 12, 2026) ......................................................... 26

*Osborne v. Ohio*,
495 U.S. 103 (1990)................................................................................................ 17

*Pandora Distribution, LLC v. Ottawa OH, LLC*,
2023 U.S. App. LEXIS 1576 (6th Cir. Jan. 20, 2023) .......................................................... 22

*San Diego v. Roe*,
543 U.S. 77 (2004).................................................................................................. 28

*Scholler v. Scholler*,
10 Ohio St. 3d 98 (1984)......................................................................................... 23

*Schwamberger v. Marion Cty. Bd. of Elections*,
988 F.3d 851 (6th Cir. 2021) ...................................................................................... 16

*Scott v. News-Herald,*
25 Ohio St.3d 243 (1986).......................................................................................... 29

*Simon v. Zipperstein,*
32 Ohio St. 3d 74 (1987)........................................................................................... 23

*Snay v. Burr*,
167 Ohio St. 3d 123, 2021- Ohio 4113 (Ohio 2021) .............................................................. 22

*Snyder v. Phelps*,
562 U.S. 443 (2011) ........................................................................................................ 27, 28

*State v. Kerrigan,*
168 Ohio App. 3d 455, 2006-Ohio-4279, P59, 2006 Ohio App. LEXIS 4194 ......................... 17

*State v. Martin*,
2016-Ohio-7196, 149 Ohio St. 3d 292 (2016) ....................................................................... 17

*State v. Nolan,*
2014-Ohio-4800, 141 Ohio St. 3d 454 ................................................................................... 19

*State v. Schye*,
2024 WI App 6, 410 Wis. 2d 595, 3 N.W.3d 507 (2024) ......................................................... 22

*State v. Smith*,
2007-Ohio-502 (Ct. App.) ...................................................................................................... 18

*State v. Tooley*,
2007-Ohio-3698, 114 Ohio St. 3d 366 (2007) ....................................................................... 18

*State v. Young,*
37 Ohio St.3d 249 (1988) ....................................................................................................... 17

*Sullins v. Raycom Media, Inc*.,
2013-Ohio-3530 (Ct. App.) .................................................................................................... 25

*Sustin v. Fee,*
69 Ohio St. 2d 143 (1982) ...................................................................................................... 21

*United States v. Amirault*,
173 F.3d 28 (1st Cir. 1999) ..................................................................................................... 17

*United States v. Hill*,
459 F.3d 966 (9th Cir. 2006) .................................................................................................. 16

*United States v. Perkins*,
850 F.3d 1109 (9th Cir. 2017) ................................................................................................ 17

*Vangheluwe v. Got News, LLC,*
365 F. Supp. 3d 836 (E.D. Mich. 2019) ................................................................................. 26

*Woods v. Sharkin*,
2022-Ohio-1949 (Ct. App.) .......... 25

*York v. GE*,
144 Ohio App. 3d 191 (2001) .......... 21

*Zimmerman v. Russ Steamer Serv., LLC*,
2026 U.S. Dist. LEXIS 65897 (S.D. Ohio Mar. 27, 2026) .......... 22

**STATUTES**

15 U.S.C. § 6851 .......... 8, 12, 13, 15

Ohio Rev. Code § 2307.12 .......... 29

Ohio Rev. Code § 2307.60 .......... 8, 12, 16

Ohio Rev. Code § 2317.05 .......... 24

Ohio Rev. Code § 2747.01 .......... 26, 27, 29

Ohio Rev. Code § 2747.01 et seq. .......... passim

Ohio Rev. Code § 2747.05 .......... 10, 26, 29

Ohio Rev. Code § 2907.01 .......... 18

Ohio Rev. Code § 2907.323 .......... passim

Ohio Rev. Code § 2923.02 .......... 12, 19

Ohio Rev. Code § 2923.03 .......... 12, 20

Ohio Rev. Code Ann. § 2111.08 .......... 14

Ohio Rev. Code. § 2901.22 .......... 18, 19

Ohio Rev. Code. § 3109.04 .......... 14

**OTHER AUTHORITIES**

S.B. 237: Hearings Before the S. Judiciary Comm., 135th Gen. Assembly (2024) .......... 27

**RULES**

Fed. R. Civ. P. 12 .......... passim

## STATEMENT OF THE ISSUES TO BE DECIDED

1. Whether Claim 1 under 15 U.S.C. § 6851 fails where the publication was on a matter of public concern and done with the consent of R.M.'s parent.

2. Whether Plaintiff's state law claims, Claims 2 through 5, under Ohio Rev. Code § 2307.60, and for wrongful intrusion invasion of privacy, negligence, and civil conspiracy fail to state a claim.

3. Whether Defendants are entitled to immunity from suit and attorneys' fees from Moreno as to Claims 2 through 5, pursuant to UPEPA, where the claims are based on the exercise of free speech on a matter of public concern.

## SUMMARY OF THE ARGUMENT

Every claim against Minc arises from the publication, on behalf of a sitting Congressman and in the midst of his reelection campaign, of documents rebutting highly publicized abuse allegations. None states a claim.

On Claim 1 (15 U.S.C. § 6851), Miller, as R.M.'s joint legal custodian, had authority to consent to the publication, and Minc acted as his agent. Even setting consent aside, the Complaint pleads no facts showing that Minc knew of, or recklessly disregarded, any lack of consent. Instead, it pleads that the image was released by mistake. The claim is also barred by § 6851(b)(4)(C), because the disclosure concerned a matter of public concern: the image documents the very injury at the center of the public dispute. On Claim 2 (Ohio Rev. Code § 2307.60), no criminal act occurred. Section 2907.323(A)(2) requires a lewd exhibition or graphic focus on the genitals, which Plaintiff does not allege. It exempts distribution for a proper purpose, and it applies only to a parent or guardian, which Minc is not. Attempt requires purpose or knowledge, and complicity

requires both an underlying offense and the culpability to commit it. Absent individual liability, Minc LLC has no organizational liability.

On Claim 3, intrusion concerns how information is acquired, not its publication. Miller lawfully received the image from Moreno through a court-ordered platform, and an innocuous photograph is not "highly offensive." On Claim 4, negligence, Minc owed no duty to his client's daughter, and Ohio law shields attorneys from third-party claims for good-faith acts on a client's behalf. Ohio also does not permit recovery for emotional distress alone on these facts. On Claim 5 (Civil Conspiracy), Plaintiff alleges no underlying unlawful act, no agreement, and no malice. The intra-corporate conspiracy doctrine bars any conspiracy between Minc and his own firm.

The fair report privilege independently bars every state-law claim. Finally, because those claims target speech on a matter of public concern, UPEPA entitles Minc to immunity from suit on the state-law claims and to an award of fees against Moreno.

## MEMORANDUM OF LAW

Emily Moreno did not file this lawsuit for a proper purpose. She is not protecting R.M. Rather, she is using this process to abuse R.M. and score points against her ex-husband, Defendant Congressman Miller, and his counsel, Defendants Aaron Minc and Minc LLC (the latter two collectively referred to as "Minc"). The parents have joint legal custody, therefore the complained-of publication was as consented to by one parent as this lawsuit was by another. Minc served as agent for a custodial parent, Miller. Every act complained of was lawful and legally consented-to.

Minc, therefore, moves to dismiss all counts in the complaint per Fed. R. Civ. P. 12(b)(6), and Minc is entitled to fees against Moreno per the Ohio Uniform Public Expression Protection Act ("UPEPA"), Ohio Rev. Code § 2747.05(A).[1] The publication at issue was part of a bundle of documents distributed, on behalf of Congressman Miller. To the extent applicable, Minc joins and incorporates Miller's motion to dismiss (ECF No. 17), incorporated herein by reference, except as to the procedural elements of UPEPA.

### 1.0 FACTUAL BACKGROUND

R.M. is the daughter of Congressman Max Miller and Emily Moreno. Complaint, ECF No. 1, at ¶¶ 13, 21, & 22.[2] Congressman Miller is running for reelection in November 2026, and he shares joint custody of R.M. with Moreno. *Id.* at ¶¶ 13 & 21. Miller and Moreno have been embroiled in a "public custody dispute" since their divorce. *Id.* at ¶ 23. This dispute has received "national and international attention" where eyes from all over the nation and world were on him."

---

[1] It is Moreno who brings this action nominally for R.M. Any fee award should be issued against Moreno; it is not R.M.'s fault that her mother sought to file this frivolous and vindictive litigation.

[2] Minc recites the facts as alleged in the Complaint per the requirements of Rule 12(b)(6); it is without prejudice to contesting any allegation at any other stage of this litigation.

*Id*. ¶¶ 23, 25, 29. Miller is also suing Moreno for defamation in the Court of Common Pleas in Cuyahoga County; Minc is counsel to Miller in the defamation suit. *Id.* at ¶ 24. The subject matter of the defamation suit arose from defamatory statements by Moreno in *The Daily Mail*, which are the subject of "public attention[.]" *Id.* at ¶¶ 23 & 25. Moreno's personal attorneys in the defamation suit purport to represent R.M. in this action. *See, e.g.,* ECF No. 1-3 at 2. Moreno is, notably, the daughter of Ohio Senator Bernie Moreno. *See* ECF No. 1-11.

On August 2, 2026, Miller hosted a public livestream on X/Twitter regarding Moreno's highly-publicized allegations. ECF No. 1 at ¶ 27. Miller stated he would post a link to evidence that would exonerate him from Moreno's allegations. *Id.* at ¶ 30. Hundreds of thousands of people were interested. *Id.* at ¶ 32. And, Miller did exactly that—he posted a link to a Dropbox folder containing a trove of material. *Id.* at ¶ 31 and ECF No. 1-5. Minc is alleged to be the owner of the Dropbox folder. ECF No. 1 at ¶ 31 and ECF No. 1-6. Specifically, Miller highlighted that the documents were published on his behalf, by his personal counsel. ECF No. 1 at ¶ 34.

After some technical problems with the Dropbox folder occurred, it was republished. *Id.* at ¶¶ 35-38. The folder contained subfolders with various documents and media files, including police reports, recorded conversations between Ms. Moreno and Miller, and court documents. *Id.* at ¶ 39. Among the files in a folder called "Folder 03_Feb_1_Custody_Exchange" was a PDF file entitled "EX-306_OFWMessages-Feb-1-to-25-2026-with-Attachments[,]" which contained messages between Miller and Moreno using the court-ordered OurFamilyWizard parenting application. *Id*. at 41. Embedded in that PDF was a photograph labeled "IMG_9158" that is alleged to be a nude image of R.M., who is identified in the PDF file. *Id.* at ¶¶ 42-43. The image is as innocuous as could be. Anyone who finds it lascivious is very disturbed.

Moreno took that photograph. Moreno, herself, originally disseminated it. ECF No. 1-3 at 16 & 20. Any claims she makes regarding the photograph would therefore apply to her equally.

## 2.0 LEGAL STANDARD

As set forth in *Ass'n of Cleveland Fire Fighters v. City of Cleveland,* 502 F.3d 545 (6th Cir. 2007), the standard for a motion to dismiss under Fed. R. Civ. P. 12(b)(6) is as follows:

> The Supreme Court has recently clarified the law with respect to what a plaintiff must plead in order to survive a Rule 12(b)(6) motion. *Bell Atl. Corp. v. Twombly,* 550 U.S. 544 (2007). The Court stated that "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. at 1964-65 (citations and quotation marks omitted). Additionally, the Court emphasized that even though a complaint need not contain "detailed" factual allegations, its "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *Id*. (internal citation and quotation marks omitted). In so holding, the Court disavowed the oft-quoted Rule 12(b)(6) standard of *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957) (recognizing "the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief"), characterizing that rule as one "best forgotten as an incomplete, negative gloss on an accepted pleading standard." *Twombly*, 550 U.S. at 563.

502 F.3d. at 548. Instead, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations omitted). Moreno fails to state a claim and fees should be awarded per UPEPA.

## 3.0 ANALYSIS

Moreno, ostensibly for R.M., is now suing Defendants over a photograph she created and shared in the OurFamilyWizard messages. Moreno raises the following causes of action in her complaint: 1) Disclosure of Intimate Images under 15 U.S.C. § 6851; 2) Civil Liability under Ohio Rev. Code § 2307.60 (in connection with §§ 2907.323(A)(2), 2923.02, and 2923.03); 3) Wrongful Intrusion Invasion of Privacy (against Max Miller and Aaron Minc only); 4) Negligence; and 5)

Civil Conspiracy. As set forth below, none of these claims pass legal muster. As the alleged publication was by Minc on behalf of Miller, (who has joint legal custody of R.M.), it was, as a matter of law, by consent. This action arises from speech on a matter of public concern. It should be dismissed for failure to state a claim, and fees should be awarded against Moreno under UPEPA.

### 3.1 Federal Law is Inapplicable to an Innocuous Image Shared with Consent

Moreno shared an image she took of R.M., and Miller's attorney, Minc, is alleged to have published that image online as part of a tranche of documents arising from the public dispute between Miller and Moreno. Contrary to Moreno's assertion, this was not and could not have been a violation of 15 U.S.C. § 6851. "To establish a claim under 15 U.S.C. § 6851, a plaintiff must show that: (1) the image qualifies as an intimate visual depiction, (2) it was disclosed in or affecting interstate commerce, (3) without the plaintiff's consent, and (4) by a defendant who knew or recklessly disregarded the lack of consent." *Colbert v. Reed*, 2026 U.S. Dist. LEXIS 221342, at *3 (E.D. Mich. Sep. 29, 2026). Moreno's allegations (ECF No. 1 at ¶ 69) are merely conclusory and, at a minimum, the third and fourth elements are not met. Moreover, the disclosure meets the statutory exception of § 6851(b)(4)(C), for a matter of public concern or public interest.

The image is not clearly an "intimate image" within the meaning of the statute. If it were, Moreno would not have needed to seek a physician's opinion as to what it depicts. However, as Minc has more concern for R.M.'s well-being than Moreno, Minc will not subject R.M.'s image to further scrutiny and will assume *arguendo* for the purposes of this motion that the photo taken and distributed by Moreno is an intimate visual depiction under § 6851(a)(5). Further, Minc did not disclose the image in or affecting interstate commerce. At no time is it alleged that Minc

published the Dropbox link in interstate commerce. The disclosure alleged, the public sharing of the link, was done by Miller, who, as R.M.'s parent, had the authority to do so.

As R.M.'s parent, Miller consented to the disclosure. Moreno is not R.M.'s sole legal custodian; Miller shares such custody. *See Miller v. Moreno,* Case No. DR 24 401120 (Cuyahoga Cty., Oh., Common Pleas, Jan. 15, 2025)(Agreed Judgment Entry). Under Ohio law, "neither parent has any right paramount to the right of the other concerning the parental rights and responsibilities for the care of the minor[.]" Ohio Rev. Code Ann. § 2111.08; *see also* Ohio Rev. Code. § 3109.04(L)(6) (making each parent the legal custodian regardless of the location of the child). And, at all relevant times, Minc was acting as Miller's agent. "It is a principle of agency law that an agent, acting within the scope of his actual authority, expressly or impliedly conferred, can bind the principal. … [I]mplied authority carries with it the power to do all that which is reasonably necessary to carry into effect the power actually conferred." *Damon's Mo., Inc. v. Davis*, 63 Ohio St. 3d 605, 608 (1992). Just as Moreno could consent to sharing the image with Dr. Gascoigne, Miller could consent to the distribution of the image. Minc acted as Miller's agent when the documents were placed in the folder, and Miller had full authority to publish the folder.

Further, even though Minc had intended to redact the image from the folder, none of Plaintiff's allegations show that Minc, at any time, was aware of any lack of consent (and there was none) as to the distribution of the image or recklessly disregarded the issue of consent. Moreno must recite the facts that establish Minc's state of mind at the time of publication. "Mere legal conclusions will not suffice; Plaintiff must also plead facts which make the allegations plausible." *Cesario v. Chesapeake Appalachia, L.L.C.,* 2013 U.S. Dist. LEXIS 199831, at *7 (S.D. Ohio May 14, 2013). While Moreno claims that Defendants did not obtain consent from Moreno or R.M.

(Complaint at ¶ 49), nothing in the Complaint suggests that consent from Moreno was required, and the question of R.M.'s consent is a question of law. Moreno cannot have it both ways—either Moreno had no right share the image with Dr. Gascoigne and now owes R.M. $150,000 for such disclosure or, as the law recognizes, both parents, individually, have the right to consent to the distribution of the image. And, in any event, Moreno offers nothing to suggest that Minc did not believe that Miller had the authority to consent to the distribution of the image. Further, Moreno's own complaint shows a lack of intent to even distribute the image (ECF No. 1 at ¶ 52), thereby undermining the *mens rea* element of the statute, 15 U.S.C. § 6851(b)(1)(A). "Mistake" cannot support a Section 6851 claim. *Doe v. T.T.*, 2026 U.S. Dist. LEXIS 176128, at *13 (D. Utah Aug. 6, 2026). If it was distributed with consent, then there cannot be the scienter to have distributed it without consent. And even if it was distributed without consent, there cannot be knowledge by Minc of a lack of consent if there is no recognition that the image was in the folder. Thus, there cannot have been the requisite *mens rea,* no matter the outcome of the question of consent.

Moreover, Moreno's claim fails as the disclosure was on a matter of public concern or public interest. Plaintiff chose not to even attempt to plead around it, nor reference it in her complaint. Under 15 U.S.C. § 6851(b)(4)(C), no action may be brought where the disclosure was "a matter of public concern or public interest[.]" A matter of public concern exists "when it can be fairly considered as relating to any matter of political, social, or other concern to the community. To resolve the public/private distinction, we look to the content, form, and context of a given statement, as revealed by the whole record." *Marquardt v. Carlton*, 971 F.3d 546, 549 (6th Cir. 2020) (internal quotation marks and citations omitted). Speech relating to an election is on a matter of public concern. *See, e.g., Bennett v. Metro. Gov't of Nashville & Davidson Cty.*, 977 F.3d 530,

537-38 (6th Cir. 2020); *Schwamberger v. Marion Cty. Bd. of Elections*, 988 F.3d 851, 856 (6th Cir. 2021). Miller's public address and X post providing the Dropbox link, thereby distributing the image, was directly related to his reelection bid. Similarly, as Miller's statements and posting addressed the highly publicized dispute between Miller and Moreno (a Senator's daughter), that dispute generated "intense public debate and quickly became a matter of public discussion" and, thus, the statements and posting "address a matter of public concern." *Marquardt v. Carlton*, 971 F.3d 546, 552 (6th Cir. 2020). The image itself was taken by Moreno and distributed by her, and later by Miller, precisely because it addressed the subject matter of the public dispute—R.M.'s allegedly broken collar bone. (ECF No. 1 at ¶ 44). Thus, the publication of the image is expressly exempt, in these circumstances, from liability under the statute as it relates to a matter of public concern or public interest. Therefore, Count 1 must be dismissed.[3]

### 3.2 Minc is Not Liable under Ohio Rev. Code § 2307.60(A)(1) as there were No Criminal Acts

"A family snapshot of a nude child bathing presumably would not be criminal." *United States v. Hill*, 459 F.3d 966, 970 (9th Cir. 2006) (cleaned up). In Moreno's view, every sale of the Nirvana *Nevermind* album, which displays a naked baby in a pool, would be a criminal act. It is not. *See Elden v. Nirvana, L.L.C.*, 802 F. Supp. 3d 1211 (C.D. Cal. 2025). Clearly the innocuous photo at issue in this case is far from the kind of content that Moreno tries to imply. Moreno attempts to hold Minc liable under Ohio Rev. Code § 2307.60(A)(1), which provides for civil liability for criminal acts. Moreno claims that Minc violated Ohio Rev. Code § 2907.323(A)(2),

[3] Minc reserves the right to make argument regarding the extent of liquidated damages, which does not neatly fit the Rule 12(b)(6) framework and is better suited to pre-trial special verdict form motion practice.

and catch-all claims of attempt (O.R.C. § 2923.02(A)) and complicity (O.R.C. § 2923.03(A)). There was no offense, attempt at an offense, or complicity in an offense and, thus, Count 2 fails.

First, a lewdness requirement is grafted onto the statute. As the U.S. Supreme Court noted, the material must depict "a lewd exhibition or a graphic focus on genitals." *Osborne v. Ohio*, 495 U.S. 103, 123 (1990); *State v. Martin*, 2016-Ohio-7196, ¶ 8, 149 Ohio St. 3d 292, 294 (2016).[4] Although no normal person would see genitalia in that picture, assuming it is visible, merely depicting the genitals is not enough. For example, certain photographs may "point out the nudism movement in Eastern Europe. By itself, this would not violate the statute, even if nude minors are depicted, so long as there are no lewd exhibitions or graphic focusing on the genitals." *State v. Kerrigan,* 168 Ohio App. 3d 455, 468, 2006-Ohio-4279, P59, 2006 Ohio App. LEXIS 4194, *26. Plaintiff does not even allege lewd exhibition or a graphic focus. Here, there is hardly a focus on R.M.'s genitals, let alone a graphic one. While Moreno or her counsel might have focused on R.M.'s genitals, no normal person would do so. Moreno herself felt the need to hire a physician to declare that the genitals were visible at all. *Compare United States v. Perkins*, 850 F.3d 1109, 1122 (9th Cir. 2017) (holding that genitals were not the focal point of the image where, "[b]ecause of the angle, [the child's] head and torso predominate the image" and "cast a shadow on the genital area, which is pictured in the far bottom right-hand corner"); *United States v. Amirault*, 173 F.3d 28, 33 (1st Cir. 1999) ("[T]he lighting of the photograph is not primarily directed at the genital region.") One certainly hopes that Moreno was not attempting to graphically focus on her daughter's genitals when she took the photograph. She, herself, claims it was to document a

[4] Although lewdness might not apply to creation per *Martin*, 2016-Ohio-7196, ¶¶ 15-17, that only applies to Moreno, who created it, and the First Amendment considerations of *State v. Young,* 37 Ohio St.3d 249, 252 (1988), necessitate the lewdness requirement to the claims against Minc.

shoulder bruise. (ECF No. 1 at ¶ 44, ECF No. 1-3 at 20). If Moreno and her counsel now think her own photograph is lewd or has a graphic focus on the genitals, that is a disturbing psychological tell on their part, but it is, in fact, neither lewd nor graphically focused on the genitals.

Second, Moreno fails to make fact-based allegations that Minc acted recklessly, as required under the statute. *State v. Smith*, 2007-Ohio-502, ¶ 30 (Ct. App.). "A person acts recklessly when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that the person's conduct is likely to cause a certain result or is likely to be of a certain nature." Ohio Rev. Code. § 2901.22(C). Here, Moreno fails to assert Minc acted with heedless indifference or disregarded any risks. To the contrary, Moreno's own allegations demonstrate that Minc endeavored to protect R.M.'s privacy and there is nothing to suggest Minc, or any normal person, would ever consider that the image might be lewd. Moreover, she pleaded that Minc actually had intended to distribute a redacted version (though such was not required). At worst, Minc was negligent. And, where Defendant Aaron Minc, individually, cannot be liable, neither can there be organizational liability for Minc Law. Thus, the *mens rea* element is absent.

Third, there was a proper purpose to the distribution. Under Ohio Rev. Code § 2907.323(A)(2), no violation occurs when the material is disseminated "for a bona fide artistic, medical, scientific, educational, religious, governmental, judicial, or other proper purpose, by or to a[n] … other person having a proper interest in the material or performance[.]" *See State v. Tooley*, 2007-Ohio-3698, ¶ 43, 114 Ohio St. 3d 366, 380 (2007). Voter education is a proper purpose. *Compare* O.R.C. § 2907.01(E)(2) (material with political value is not harmful to juveniles); *Anderson v. Celebrezze*, 460 U.S. 780, 796 (1983) (recognizing voter education as an "important and legitimate interest"). Here, the photograph was part of a series of materials

distributed to Ohio voters so that they could, themselves, assess the veracity of Moreno's wrongful abuse accusations when they went to the polls. Therefore, as the image was not lewd and it was distributed with a proper purpose, Ohio Rev. Code § 2907.323(A)(2) was not violated and no civil liability can attach. Moreover, as a non-parent, Minc could not be liable under Ohio Rev. Code § 2907.323(A)(2), as such only is addressed to a "person's child or ward[.]"

Nor is there liability for the related claims of attempt and complicity. As to attempt under O.R.C. § 2923.02(A), Moreno does not bother to allege what Minc attempted to do. Charitably, she is claiming that Minc attempted to violate Ohio Rev. Code § 2907.323(A)(2), but she fails to show how. Was he attempting to display a lewd image? Of course not—it was Moreno's own innocuous photograph, after all. Moreno makes no allegation as to Minc having a purposeful or knowing *mens rea,* which the statute requires. *State v. Nolan,* 2014-Ohio-4800, ¶ 7, 141 Ohio St. 3d 454, 455. Minc did not act purposely. "A person acts purposely when it is the person's specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is the offender's specific intention to engage in conduct of that nature." O.R.C. § 2901.22(A). There is no allegation Minc sought to distribute a lewd image of R.M., thereby defeating purposefulness. As to knowing, "[a] person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature." O.R.C. § 2901.22(B). There is no allegation Minc knew that there were any lewd images of R.M. that could be distributed through that link. Negligence, or even recklessness, cannot satisfy this statute. Thus, the shoestring accusation of "attempt" fails.

The complicity claim under O.R.C. § 2923.03(A)(4) fails for similar reasons. Section 2923.03(A)(4) provides: "[n]o person, acting with the kind of culpability required for the commission of an offense, shall … [c]ause an innocent or irresponsible person to commit the offense." Here, as set forth above, Minc lacked the *mens rea* for the alleged underlying offense and, therefore, lacks the *mens rea* to be complicit. Moreover, the offense itself was never committed by any other person. No matter Moreno's or anyone else's depraved thoughts, the image is not lewd and it was distributed for a proper purpose. Thus, there is no plausible claim for civil liability where no criminal act occurred.

### 3.3 Moreno is the Only Person Invading R.M.'s Privacy

In the third claim, Moreno asserts wrongful-intrusion invasion of privacy (against Aaron Minc, not Minc Law), but any invasion of privacy is of Moreno's own doing. Moreno and her counsel knew exactly what they were looking for. Instead of privately and quietly alerting Minc to the precise file, they decided to try and score public relations points by going to the press about it. Their motives were as clear as they are ignoble. And the result is that people now are taking a magnifying glass to a picture of R.M. to ascertain whether her genitals are visible. Moreno and her counsel thought it more important to make R.M. genital area the second most famous child genitals in history, after the boy on the cover of Nirvana's *Nevermind*.

Under Ohio law, "[a]n actionable invasion of the right of privacy is the unwarranted appropriation or exploitation of one's personality, the publicizing of one's private affairs with which the public has no legitimate concern, or the wrongful intrusion into one's private activities in such a manner as to outrage or cause mental suffering, shame or humiliation to a person of ordinary sensibilities." *Holmes v. Landings at Becket Ridge Hills Props., LLC*, No. 1:26-cv-15,

2026 U.S. Dist. LEXIS 77052, at *8 (S.D. Ohio Apr. 8, 2026) quoting *Sustin v. Fee,* 69 Ohio St. 2d 143, 145 (1982). Moreno only makes a claim as to the third style, wrongful intrusion. (ECF No. 1 at ¶ 89.) However, the elements are not met.

There was no intrusion by Minc. Moreno created the image and transmitted it, and it was lawfully distributed to Miller. (ECF No. 1 at ¶ 41). A claim for intrusion speaks to acquisition; publication is not at issue. *Anthony v. Wonnell*, No. 91AP-995 (REGULAR CALENDAR), 1992 Ohio App. LEXIS 1950, at *20 (Ct. App. Apr. 7, 1992). Defendants lawfully obtained the image from Moreno. Moreover, Minc did not disclose any private activities; the dispute was a public one, as set forth above. Moreno makes no allegation of suffering, shame, or humiliation, only that she predicts R.M. will suffer from the same. (ECF No. 1 at ¶ 91). R.M.'s response when she reaches the age of majority is far more appropriately to be angry at her mother for having thrust the image into the spotlight than be ashamed by anything Minc did.

More significantly, nothing Minc did was wrongful. To be actionable, "the invasion of privacy must involve the viewing of affairs which are private and not in public view." *York v. GE*, 144 Ohio App. 3d 191, 194 (2001). Here, Moreno made public accusations against Miller, placing their dispute in public view. Further, the alleged intrusion must be "highly offensive" to the reasonable person. *Id.* quoting *Sustin v. Fee*, 69 Ohio St. 2d 143, 145 (1982). The photograph is an innocuous one, apparently requiring expert opinion to determine if genitals are even visible. It is an innocuous photograph, commonplace in society.[5] "A simple bathtub photograph taken by a parent," that is not staged to display intimate parts, is unproblematic. *State v. Schye*, 2024 WI App

[5] "[W]hen a document is referred to in the pleadings and is integral to the claims," then the court can consider that document on a motion to dismiss. *See Commercial Money Ctr., Inc. v. Ill. Union Ins. Co.*, 508 F.3d 327, 335-36 (6th Cir. 2007).

6, 410 Wis. 2d 595, 3 N.W.3d 507 (2024). The Nirvana *Nevermind* album, in which a baby's penis is visible, sold over 40 million copies. *Elden*, 802 F. Supp. 3d at 1217. The photograph is not offensive, let alone highly offensive. Thus, Count 3 should be dismissed.

### 3.4 Minc was Not Negligent

Moreno has no viable negligence claim against Minc. "In Ohio, to recover under a theory of negligence, a plaintiff must demonstrate that there was a duty, a breach of that duty, proximate causation, and injury." *Zimmerman v. Russ Steamer Serv., LLC,* 2026 U.S. Dist. LEXIS 65897, at *14-15 (S.D. Ohio Mar. 27, 2026). "The first element of negligence is duty." *Pandora Distribution, LLC v. Ottawa OH, LLC*, 2023 U.S. App. LEXIS 1576, at *14 (6th Cir. Jan. 20, 2023) citing *Snay v. Burr*, 167 Ohio St. 3d 123, 2021- Ohio 4113 (Ohio 2021). Moreno merely pleads a conclusory allegation of duty. (ECF No. 1 at ¶ 95). "Duty is the relationship between plaintiff and defendant that gives rise to an obligation to exercise due care toward the plaintiff. Foreseeability alone is not always enough." *Florists' Mut. Ins. Co. as. Subrogee of Mastronardi Produce USA, Inc. v. Mt. High Greenhouse Constr., LLC*, No. 3:25 CV 592, 2026 U.S. Dist. LEXIS 170446, at *5-6 (N.D. Ohio July 31, 2026)(citation omitted). Minc was Miller's counsel and owed no separate duty to R.M.[6] Minc had no duty regarding, nor could Minc foresee, any putative harm to R.M. from an innocuous image. Moreover, even if there were such a duty, there was no breach. The image is innocuous. The only people who claim it is problematic are Moreno and her counsel, and it is

[6] To the extent that Moreno claims a duty arising from Minc's relationship with Miller, "Ohio courts make clear – many times – that when a tort claim is based on a duty arising from contractual relations, plaintiff generally must be a party or privy to the contract." *Florists' Mut. Ins. Co*., 2026 U.S. Dist. LEXIS 170446, at *7. R.M. was not a party or privy to the representation agreement.

likely they do not actually believe their own claims, but rather filed this suit as leverage in the other disputes.

Nor did Minc proximately cause any injury; children are not harmed by innocuous photographs. If anyone harmed R.M., it was Moreno, by bringing this suit, subjecting R.M. to unnecessary scrutiny. And, damages are precluded. No physical harm is alleged, thus the claim is, notwithstanding the style, for negligent infliction of emotional distress (the Court should disregard a claim that a 2 year old has lost earnings). Such a claim is only actionable where the plaintiff "has either witnessed or experienced a dangerous accident or appreciated the actual physical peril." *Heiner v. Moretuzzo*, 73 Ohio St.3d 80, 86–87 (1995). Moreno makes no such allegations.

Additionally, under Ohio law, an attorney is immune to third-party claims for actions "performed in good faith on behalf of a client[.]" *Simon v. Zipperstein,* 32 Ohio St. 3d 74, 76 (1987); *see also Scholler v. Scholler*, 10 Ohio St. 3d 98, 102-03 (1984); *Bar Processing Corp. v. Barnes*, No. 21-3814, 2022 U.S. App. LEXIS 11705, at *9 (6th Cir. Apr. 28, 2022)(quoting *Simon*). Plaintiff makes no allegation of a lack of good faith and, therefore Minc is immune to Plaintiff's state-law claims. Thus, claim 4 should be dismissed.

### 3.5 The Civil Conspiracy Claim Lacks Merit

Civil conspiracy is "a malicious combination of two or more persons to injure another in person or property, in a way not competent for one alone, resulting in actual damages." *Kenty v. Transamerica Prem. Ins.* (1995), 72 Ohio St. 3d 415, 419 . "A claim of civil conspiracy rests upon an actual agreement to participate in wrongful activity." *Arnoff v. PAJ Enters., LLC*, 2022-Ohio-1759, ¶ 18 (Ct. App.). "[A] claim for civil conspiracy cannot survive without an underlying

unlawful act." *Hrivnak v. NCO Portfolio*, 994 F. Supp. 2d 889, 902 (N.D. Ohio 2014) citing *Gosden v. Louis*, 116 Ohio App. 3d 195, 219 (9th Dist. 1996).

Moreno's claim fails in multiple aspects. First, there is no non-conclusory allegation of malice. "Typically, common law malice connotes 'hatred, ill will or a spirit of revenge' or a 'conscious disregard for the rights and safety of other persons that has a great probability of causing substantial harm.'" *LaBarge v. Werner Enters*., No. 2:07-cv-177, 2008 U.S. Dist. LEXIS 116521, at *12-13 (S.D. Ohio July 10, 2008) quoting *Jacobs v. Frank*, 60 Ohio St.3d 111, 115 (1991). Moreno's complaint is devoid of allegations of hatred, ill-will, or a spirit of revenge, nor any disregard for R.M.'s rights, as there was no probability of causing R.M. substantial harm.

Second, as none of Moreno's other claims are meritorious or plausible, there is no underlying unlawful act onto which a civil conspiracy claim can tack. Publishing documents to rebut public accusations is not an unlawful act, and agreeing to do so is not a conspiracy. It is a claim devoid of facts, seemingly tacked on merely because there are multiple defendants named.

Third, there is no allegation of any "agreement" to do a wrongful act. In fact, Plaintiff repeatedly pleads recklessness and the absence of knowledge and intent. There are no factual allegations that Minc and Miller agreed to do any action to harm R.M. Moreover, to the extent that Aaron Minc is deemed to have conspired with Minc Law, such is precluded by the intra-corporate conspiracy doctrine. *See Ohio Vestibular & Balance Ctrs., Inc. v. Wheeler*, 2013-Ohio-4417, ¶ 28 (Ct. App.). It is frivolous and claim 5 must be dismissed.

### 3.6 The State Law Claims Fail Under the Fair Report Privilege

Pursuant to Ohio's statutory fair report privilege, Ohio Rev. Code § 2317.05, "[t]he publication of a fair and impartial report of…the filing of any affidavit, pleading, or other

document in any … civil cause in any court of competent jurisdiction…is privilege[.]" Nothing in the statute limits the privilege to any particular cause of action and, therefore, it is a complete bar to Moreno's claims arising under Ohio law. *See Woods v. Sharkin, 2*022-Ohio-1949, ¶ 61 (Ct. App.)(characterizing the fair report privilege as a "complete defense to all claims" no matter the legal theory). Here, the publication arose from documents filed in the matrimonial and defamation actions between Miller and Moreno. "The fair report privilege does not require a verbatim reproduction of the official record or other information obtained from the government in order for a published report based on the record or governmental information to fall within the scope of the privilege. The privilege applies if the defendant demonstrates that the publication: (1) deals with a matter of public concern and (2) is a fair and substantially accurate account of the official record or governmental information." *Sullins v. Raycom Media, Inc*., 2013-Ohio-3530, ¶ 24 (Ct. App.)(citations and quotation marks omitted). As noted, the image was published amid a public dispute on a matter of public concern and is an accurate account of the collarbone-accusation.

None of the exceptions to the privilege apply: the image was not published maliciously and Minc has not refused to publish Moreno's explanation or any determination of the disputes. Nor is the image blasphemous or indecent; it is an innocuous photograph. Further, claims under Ohio law based on such fair reports are not actionable unless the publication was made with actual malice. *See Sullins v. Raycom Media, Inc*., 2013-Ohio-3530, ¶ 20 (Ct. App.). Moreno does not claim the image is a false one—it is the very image she photographed.

**3.7 Minc is Immune from Suit and is Entitled to Fees Against Moreno**

This is a SLAPP suit. Ohio's Uniform Public Expression Protection Act ("UPEPA"), Ohio Rev. Code §§ 2747.01-2747.06, entitles Minc to substantive immunity from suit and a substantive

right to fees upon entry of dismissal. Such fees should be awarded against Moreno (not R.M.). Although the Sixth Circuit has called into question the applicability of Tennessee's anti-SLAPP law (*Apex Bank v. Rainsford*, 2022 U.S. App. LEXIS 32277, at *8-9 (6th Cir. Nov. 22, 2022)), it has not addressed Ohio's law, which is different – as the Ohio statute grants Ohioans substantive rights, which no rule of civil procedure can take away. Courts in this circuit incorporate other anti-SLAPP laws within the umbrella of a Rule 12(b)(6) motion. *See, e.g., Vangheluwe v. Got News, LLC,* 365 F. Supp. 3d 836 (E.D. Mich. 2019).

Unlike, perhaps, some other state anti-SLAPP laws, UPEPA provides for express substantive rights. First, it expressly confers "substantive immunity from suit[.]" Ohio Rev. Code § 2747.01(E). A state statutory immunity applies in diversity cases. *Chesher v. Neyer*, 477 F.3d 784, 793 (6th Cir. 2007). While this is a federal-question jurisdiction case, with supplemental jurisdiction exercised over the state law claims, the state's substantive law applies to the same extent as in diversity cases. *See Jones v. City of Elyria*, 947 F.3d 905, 912 (6th Cir. 2020). Thus, this Court must give full effect to the immunity from suit provided by UPEPA.

Second, it provides a substantive right to prevailing party fees. Ohio Rev. Code § 2747.05(A). Fee shifting laws that embody a substantive policy, not merely litigation conduct, are enforceable in Federal court in diversity cases. *Oldnar Corp. v. Sanyo N. Am. Corp*., 2026 U.S. App. LEXIS 13835, at *13-14 (6th Cir. May 12, 2026). As set forth below, Minc is entitled to their reasonable attorneys' fees.

UPEPA "is aimed at "protection for individuals exercising their constitutional right to free speech against frivolous lawsuits designed to stifle opposition." S.B. 237: Hearings Before the S.

Judiciary Comm., 135th Gen. Assembly (2024),[7] "These lawsuits," Senators Theresa Gavarone and Nathan Manning testified, "are purposed to silence or intimidate an individual for exercising their rights to free speech, which is protected under both the Ohio and United States Constitutions." *Id.*

"The UPEPA applies to certain causes of action asserted against a 'person' in a civil action, including a cause of action based upon '[t]he person's exercise of the right of freedom of speech … on a matter of public concern." *Lawrence v. Gilby's Pizza Craven LLC,* 2026-Ohio-1797, ¶ 5 (Ct. App.) quoting O.R.C. § 2747.01(B)(3). It protects against "cause[s] of action [] based on a communication or action described in division (B) of section 2747.01 of the Revised Code" where none of the exceptions of "division (C) of section 2747.01 of the Revised Code" apply and where the plaintiff fails to state a cause of action and/or "fails to establish a prima-facie case for each essential element of the cause of action[.]" *Id.* quoting O.R.C. § 2747.04. Such applies to more than defamation. *See Atkins v. Brown*, No. CV-25- 125167 (Cuyahoga Feb. 2, 2026).

First, Moreno's claims are based on a communication described in O.R.C. § 2747.01(B)(3), as it is based on Defendants' exercise of their right of freedom of speech under the Federal and state constitution on a matter of public concern. The protections provided are "broadly construe[d] and appl[ied.]" O.R.C. § 2747.06(B). Speech about a political candidate's private life is protected speech. *Monitor Patriot Co. v. Roy*, 401 U.S. 265 (1971). "Given the realities of our political life, it is by no means easy to see what statements about a candidate might be altogether without relevance to his fitness for the office he seeks." *Id.* at 275. Defining "public concern" in similar UPEPA contexts, both Utah and Washington used the Supreme Court's definition in *Snyder v. Phelps*, 562 U.S. 443, 453 (2011). *See Mackey v. Krause*, No. 20240785, 2025 WL 24800059, at

---

[7] https://search-prod.lis.state.oh.us/api/v2/general_assembly_135/legislation/sb237/00_IN/pdf/

*8 (Utah Aug. 28, 2025); *M.G. v. Bainbridge Island Sch. Dist. #303*, 566 P.3d 132, 145 (Wash. Ct. App. 2025). In *Snyder*, the Court held that "[s]peech deals with matters of public concern when it can be 'fairly considered as relating to any matter of political, social, or other concern to the community,' or when it 'is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public." *Id*. (citing *Connick v. Myers*, 461 U.S. 138, 146 (1983); *San Diego v. Roe*, 543 U.S. 77, 83–84 (2004)). That standard is met here.

As set for in Section 3.1, *supra*, the publication of the image was on a matter of public concern as it relates to the reelection campaign of Miller in the context of his high-profile disputes with Moreno, which significantly involve claims relating to R.M. As Moreno pleads, it is a "public custody dispute" (ECF No. 1 at ¶ 23), relates to a defamation suit arising from a high-profile article in *The Daily Mail* (*id.* at ¶ 24), the dispute has had "public attention" (*id.* at ¶ 25), and the publication related to a public livestream (*id.* at ¶ 27). In fact, Moreno highlights the publication of the image as being tied to Miller's re-election campaign. (*Id.* at ¶ 14). This dispute has been of significant media interest.[8] The "freedom to discuss public affairs and public officials is unquestionably… the kind of speech the First Amendment was primarily designed to keep within the area of free discussion." *N.Y. Times v. Sullivan*, 376 U.S. 254, 296-97 (1964) (Black, J., concurring). "Any threat of liability, with regard to the expression of unpopular statements, may

[8] *See* Hailey Fuchs, *Max Miller sues ex-wife and her legal team for domestic abuse allegations,* Politico (May 14, 2026), https://www.politico.com/news/2026/05/14/max-miller-lawsuit-abuse-moreno-00920440; Frank Thorp V and Scott Wong, *Speaker Mike Johnson responds to domestic abuse allegations against a GOP congressman: 'He's got to work that out'*, NBC News (May 15, 2026), https://www.nbcnews.com/politics/congress/speaker-johnson-responds-domestic-abuse-allegations-max-miller-divorce-rcna345318; Julie Carr Smyth, *US Rep. Max Miller sues his ex-wife for defamation in escalation of long-running divorce feud*, CBS News 19 (May 14, 2026), https://whnt.com/news/politics/ap-politics/ap-us-rep-max-miller-sues-his-ex-wife-for-defamation-in-escalation-of-long-running-divorce-feud

result in a 'chilling' effect with devastating consequences to a democratic society." *Scott v. News-Herald,* 25 Ohio St.3d 243, 246 (1986). Additionally, it was a "communication on an issue under consideration or review in a legislative, executive, judicial, administrative, or other governmental proceeding." Ohio Rev. Code § 2747.01 (B)(2). The speech directly related to the judicial disputes between Miller and Moreno.

Second, none of the exceptions of O.R.C. § 2747.01 (C) apply—this is not an action against the government, an action by the government, an action regarding the sale or leasing of goods or services, or a survivorship/wrongful death claim. Finally, as set forth in Sections 3.2-3.5, none of the state law causes of action state a claim under Rule 12(b)(6), and Moreno cannot establish each and every essential element of her claim.

As Minc is protected under UPEPA, Minc is entitled to the statutory immunity from suit. And the Court must award reasonable attorneys' fees, court costs, and litigation expenses against Moreno. O.R.C. § 2747.05(A). As "next friend[,]" Ohio makes Moreno liable for costs of actions brought by her for R.M. Ohio Rev. Code § 2307.12. Upon granting this motion, Minc will submit a supplemental application to liquidate the fees and expenses against Moreno.

## 4.0 CONCLUSION

The Court should find Minc immune from suit as to the state law claims, dismiss all claims with prejudice, and award Minc reasonable attorneys' fees, costs, and expenses.

Dated: October 13, 2026.

Respectfully Submitted,

*/s/ Marc J. Randazza*
Marc Randazza (MA651477)
RANDAZZA LEGAL GROUP, PLLC
30 Western Ave.
Gloucester, MA 01930
Tel: (888) 887-1776
Email:ecf@randazza.com

*Counsel for Defendants,*
*Aaron Minc and Minc LLC*

Civil Action No. 1:26-cv-01899

**CERTIFICATION PURSUANT TO LOCAL RULE 7.1(f)**

I HEREBY CERTIFY that pursuant to Local Civil Rule 7.1(f), this case has not yet been assigned a track, and that the foregoing document complies with the 20-page limit pursuant to LR 7.1(f) for memoranda relating to dispositive motions in unassigned cases.

Respectfully Submitted,

*/s/ Marc J. Randazza*
Marc Randazza

Civil Action No. 1:26-cv-01899

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on October 13, 2026, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that a true and correct copy of the foregoing document is being served on all appearing parties via transmission of Notices of Electronic Filing generated by CM/ECF.

Respectfully Submitted,

*/s/ Marc J. Randazza*
Marc Randazza