**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| R.M., A MINOR CHILD THROUGH HER MOTHER, EMILY MORENO, | ) | CASE NO. 1:26-cv-01899-MJH |
| Plaintiff, | ) | JUDGE MICHAEL J. HENDERSHOT |
| v. | ) | MAGISTRATE JUDGE JENNIFER DOWDELL ARMSTRONG |
| MAX L. MILLER, et al., | ) | **DEFENDANT MAX L. MILLER'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6) AND OHIO REV. CODE 2747.02 (OHIO ANTI-SLAPP STATUTE);** |
| Defendants. | ) | **REQUEST FOR ORAL ARGUMENT** |

Defendant Max L. Miller, by and through undersigned counsel, respectfully moves this Court for an order: (1) pursuant to Fed. R. Civ. P. 12(b)(6), dismissing each claim asserted against him in Plaintiff's First Amended Complaint (Doc. #20) for failure to state a claim upon which relief can be granted; and (2) pursuant to Ohio's Uniform Public Expression Protection Act, Ohio Rev. Code 2747.01 *et seq.* ("UPEPA"), granting expedited relief dismissing with prejudice Plaintiff's state-law claims against him (Claims 4 through 7) and awarding Defendant Miller his reasonable attorney's fees, court costs, and other reasonable litigation expenses under Ohio Rev. Code 2747.05(A) against Emily Moreno, who brought this action as next friend, and not against the minor child R.M.

This Motion is directed to the First Amended Complaint and supersedes Defendant Miller's Motion to Dismiss (Doc. #17), which was directed to the original Complaint and which Defendant Miller has withdrawn as moot by notice filed contemporaneously. This Motion is timely under

Fed. R. Civ. P. 15(a)(3) and Ohio Rev. Code 2747.02. Defendant Miller requests oral argument. The grounds for this Motion are set forth in the following Memorandum in Support.

## MEMORANDUM IN SUPPORT

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................4
I. STATEMENT OF THE ISSUES ....................6
II. SUMMARY OF ARGUMENT ....................6
III. PROCEDURAL HISTORY ....................7
IV. STATEMENT OF ALLEGED FACTS ....................8
V. APPLICABLE STANDARDS ....................10
VI. LAW AND ARGUMENT ....................11
A. Claims 1 and 2 Fail to State a Claim Under 15 U.S.C. § 6851. ....................11
1. Plaintiff's own allegations place both claims within § 6851(b)(4)(C). ....................11
2. Plaintiff does not plausibly allege the required mental state. ....................12
3. Claim 2 pleads no facts about any transfer. ....................14
4. At minimum, the per-download, per-transfer, and punitive damages theories fail. ....................14
B. Claim 4 Fails to State a Claim Under Ohio Rev. Code 2307.60. ....................15
1. Attempt and complicity require a mental state Plaintiff does not plausibly plead. ....................15
2. Plaintiff does not plausibly allege a violation of Ohio Rev. Code 2907.323(A)(2). ....................15
C. Claim 5 Fails Because the Matter Was of Legitimate Public Concern and Plaintiff Does Not Plausibly Allege an Intentional Publication. ....................17
D. Claim 6 Fails Because It Seeks Only Emotional-Distress Damages Ohio Does Not Allow. ....................17
E. Claim 7 Fails Because Plaintiff Alleges No Malicious Combination and No Underlying Intentional Wrong. ....................18
F. UPEPA Independently Requires Dismissal of Claims 4 Through 7 With Prejudice and an Award of Fees. ....................19
1. This Motion is timely. ....................19
2. UPEPA applies to the state-law claims on the ground Defendant Miller invokes. ....................19
3. Claims 4 through 7 are based on Defendant Miller's exercise of free speech on a matter of public concern. ....................21
4. No exception in Ohio Rev. Code 2747.01(C) applies. ....................21
5. Claims 4 through 7 must be dismissed with prejudice, and fees must be awarded against the next friend. ....................22
G. Alternatively, the Court Should Decline Supplemental Jurisdiction Over the State-Law Claims. ....................22
VII. CONCLUSION ....................23
LOCAL RULE 7.1(f) CERTIFICATION ....................24
CERTIFICATE OF SERVICE ....................24

# TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .......... 10, 13
*Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426 (6th Cir. 2008) .......... 10
*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) .......... 10, 14
*Berk v. Choy*, 607 U.S. 187 (2026) .......... 19
*Cates v. Crystal Clear Techs., LLC*, 874 F.3d 530 (6th Cir. 2017) .......... 10, 13
*Crawford v. Tilley*, 15 F.4th 752 (6th Cir. 2021) .......... 8
*Doe v. T.T., II, Inc.*, No. 2:24-cv-00879 (D. Utah Aug. 6, 2026) .......... 12
*Doe v. X Corp.*, 821 F. Supp 3d 632 (N.D. Tex. 2026) .......... 12
*Heiner v. Moretuzzo*, 73 Ohio St.3d 80, 1995-Ohio-65 .......... 18
*Hunt v. City of Toledo Law Dep't*, 881 F. Supp. 2d 854 (N.D. Ohio 2012) .......... 18
*Jones v. Bock*, 549 U.S. 199 (2007) .......... 10
*Jones v. City of Elyria*, 947 F.3d 905 (6th Cir. 2020) .......... 20
*Kenty v. Transamerica Premium Ins. Co.*, 72 Ohio St.3d 415, 650 N.E.2d 863 (1995) .......... 18
*Killilea v. Sears, Roebuck & Co.*, 27 Ohio App.3d 163, 499 N.E.2d 1291 (10th Dist. 1985) .......... 17
*Lawrence v. Gilby's Pizza Craven, L.L.C.*, 2026-Ohio-1797 (6th Dist.) .......... 20
*Marquardt v. Carlton*, 971 F.3d 546 (6th Cir. 2020) .......... 11
*Monitor Patriot Co. v. Roy*, 401 U.S. 265 (1971) .......... 11, 17, 21
*Morales v. Trans World Airlines, Inc.*, 504 U.S. 374 (1992) .......... 11
*Musson Theatrical, Inc. v. Fed. Express Corp.*, 89 F.3d 1244 (6th Cir. 1996) .......... 23
*Osborne v. Ohio*, 495 U.S. 103 (1990) .......... 16, 17
*Schwamberger v. Marion Cnty. Bd. of Elections*, 988 F.3d 851 (6th Cir. 2021) .......... 11
*Snyder v. Phelps*, 562 U.S. 443 (2011) .......... 11, 17, 21
*State v. Johnson*, 93 Ohio St.3d 240, 754 N.E.2d 796 (2001) .......... 15
*State v. Martin*, 2016-Ohio-7196 .......... 16
*State v. Young*, 37 Ohio St.3d 249, 525 N.E.2d 1363 (1988) .......... 16
*Walker v. Arrington*, 2026-Ohio-3881 (8th Dist.) .......... 20
*Williams v. Aetna Fin. Co.*, 83 Ohio St.3d 464, 700 N.E.2d 859 (1998) .......... 18

**Statutes**

15 U.S.C. § 6851 .......... passim
28 U.S.C. § 1367 .......... 22
Ohio Rev. Code 2307.12 .......... 22
Ohio Rev. Code 2307.60 .......... 6, 9, 15
Ohio Rev. Code Chapter 2747 (2747.01–2747.06) .......... passim
Ohio Rev. Code 2901.21 .......... 17
Ohio Rev. Code 2901.23, 2901.24 .......... 15
Ohio Rev. Code 2907.323 .......... 15, 16
Ohio Rev. Code 2923.01, 2923.02, 2923.03 .......... 15

**<u>Rules</u>**

Fed. R. Civ. P. 8, 10(c), 12(b)(6), 12(d), 17(c) ....................................................................7, 20, 22

## I. STATEMENT OF THE ISSUES

1. Whether Claims 1 and 2 under 15 U.S.C. § 6851 fail because Plaintiff's allegations place the disclosures within the exclusion for "a matter of public concern or public interest," § 6851(b)(4)(C), and do not plausibly allege that Defendant Miller knew of, or recklessly disregarded, a lack of consent to the disclosure of an image he did not know was there.

2. Whether Plaintiff's demand for $150,000 per download and per internal transfer, and for punitive damages, fails as a matter of law under 15 U.S.C. § 6851(b)(3)(A)(i).

3. Whether Claims 4 through 7 (Ohio Rev. Code 2307.60, public disclosure of private facts, negligence, and civil conspiracy) fail to state a claim.

4. Whether this Motion is timely under Ohio Rev. Code 2747.02, and whether UPEPA requires dismissal of Claims 4 through 7 with prejudice and an award of fees against the next friend.

## II. SUMMARY OF ARGUMENT

The amendment adds parties and counts, but not a viable claim against Defendant Miller. It still alleges that a congressman seeking reelection responded on a public livestream to nationally reported accusations that he abused his former wife and daughter, and linked to a counsel-assembled folder of documents he said rebutted them; that one page of one document contained an image of R.M. documenting the injury at the center of those accusations; and it now attaches his sworn testimony that he did not know the image was there.

*First*, Congress excluded from § 6851 any action "relating to . . . a matter of public concern or public interest." 15 U.S.C. § 6851(b)(4)(C). Plaintiff's allegations establish that exclusion. *Second*, § 6851 requires a person who "knows that, or recklessly disregards whether," the individual has not consented. Plaintiff pleads only that Defendant Miller "failed to review the

folder" and gave his counsel "carte blanche," and her own exhibit records his testimony that he "would never have thought" the image "would be included in there." New Claim 2 pleads no facts about any transfer at all. *Third*, the statute provides a single award of "liquidated damages in the amount of $150,000"; it does not authorize $150,000 per download or per transfer, or punitive damages.

The state-law claims fail on their own terms, and because each is based on speech on a matter of public concern, UPEPA requires their dismissal with prejudice and an award of fees against the next friend. This Motion is timely, and Plaintiff herself told this Court that her amendment mooted Defendant Miller's original, timely UPEPA motion.

## III. PROCEDURAL HISTORY

Plaintiff filed this action on August 12, 2026. (Doc. #1.) Defendant Miller was served on August 27, 2026. (Doc. #12.) The Court denied Plaintiff's application for entry of default (Doc. #13) and, by non-document order entered September 25, 2026, granted Defendant Miller leave to respond to the Complaint by October 1, 2026. On October 1, 2026, Defendant Miller filed a combined motion to dismiss under Rule 12(b)(6) and UPEPA. (Doc. #17.) On October 13, 2026, Defendants Aaron Minc and Minc LLC filed their own motion. (Doc. #18.)

On October 22, 2026, Plaintiff filed her First Amended Complaint, adding two defendants, two new § 6851 counts, and a new privacy theory, and abandoning her original intrusion claim. (Doc. #20.) The next day, Plaintiff filed a brief opposing both pending motions on the ground that her amendment had mooted them, ***including the UPEPA motions***. Plaintiff told the Court that "[w]hen a plaintiff amends a complaint, it moots pending motions to dismiss ***and motions for expedited relief under UPEPA***." (Doc. #23 at 1–2, PageID #566–67 (emphasis added).) She argued that, "applying UPEPA, courts have held that an amended complaint moots the motion."

(*Id.* at 2, PageID #567.) And she asked the Court to so hold: "Because an amended complaint renders both motions to dismiss ***and UPEPA motions moot***, and R.M. filed an amended complaint, this Court should hold that Defendants' respective motions are moot." (*Id.* at 3, PageID #568 (emphasis added); *accord id.* at 8, PageID #573.) Plaintiff anticipated that Defendants would "refile their UPEPA motions," and objected to refiling on one ground only: her contention that "UPEPA does not apply in federal courts." (*Id.* at 3, PageID #568.)[1]

Defendant Miller agrees that the First Amended Complaint superseded the original Complaint and mooted his original motion. *See Crawford v. Tilley*, 15 F.4th 752, 759 (6th Cir. 2021) ("The general rule is that filing an amended complaint moots pending motions to dismiss."). He has withdrawn Doc. #17 and files this Motion in response to the operative pleading.

## IV. STATEMENT OF ALLEGED FACTS

The following allegations are taken from the First Amended Complaint and its exhibits and are accepted as true solely for purposes of this Motion.

Defendant Miller is the U.S. Representative for Ohio's 7th Congressional District and, Plaintiff alleges, was "up for reelection in November 2026." (Am. Compl. ¶¶ 14, 23.) He and Ms. Moreno divorced in June 2025 and share a daughter, R.M. (*Id.* ¶ 24.) Plaintiff alleges an "unfortunately public custody dispute," accusations that he abused Ms. Moreno and R.M., and "national and international attention." (*Id.* ¶¶ 25, 27, 34.)

On August 2, 2026, Defendant Miller hosted a public livestream in which he "argued against allegations that he abused Ms. Moreno and R.M." and referred viewers to "evidence" he said exonerated him. (*Id.* ¶¶ 32, 35.) A link was posted to a Dropbox folder owned by his counsel,

---

[1]Plaintiff's brief refers to "Docs. 16 and 18." (Doc. #23 at 1, PageID #566.) Defendant Miller's motion is docketed as Doc. #17.

co-Defendant Aaron Minc, containing police reports, recorded conversations, and court documents. (*Id.* ¶¶ 36–37, 51.) One PDF of messages between the parents on the court-ordered OurFamilyWizard application contained, on page 53, an image of R.M. (*Id.* ¶¶ 53–54.) Plaintiff alleges that the image depicts R.M. unclothed, and that it "shows a large, yellow bruise on R.M.'s shoulders, an image taken after the child was in Miller's custody. She was diagnosed with a broken collarbone." (*Id.* ¶¶ 55–56.)

Plaintiff alleges that Mr. Minc placed the documents in the folder, was "responsible for making the initial redactions," and restored the files to a new folder, without removing the image, after the original folder was taken down. (*Id.* ¶¶ 37, 46–47, 58, 70–72.) As to Defendant Miller, Plaintiff alleges that he "recklessly failed to review the folder he shared" and "gave Minc carte blanche." (*Id.* ¶ 77.)

Plaintiff attaches Defendant Miller's September 28, 2026 deposition. (Doc. #20-12.) Asked whether he "disseminated photos of [his] daughter," he testified: "I was told after the fact, but I never disseminated --." (Miller Dep. 52:21–24, PageID #469.) Asked whether the folder contained photos of his daughter without clothes on, he testified: "I don't know." (*Id.* 53:3–5, PageID #470.) Asked whether he was "thinking about [his] daughter's privacy when this Dropbox link was uploaded without [his] knowledge," he testified: "Yes. I would never have thought that that . . . would be included in there." (*Id.* 55:7–13, PageID #472.) Asked how Mr. Minc obtained "a photo of your daughter without her clothes on," he testified: "I don't know." (*Id.* 114:1–4, PageID #531.)

Against Defendant Miller, Plaintiff asserts: two claims under 15 U.S.C. § 6851 (Claim 1, for the public folder; Claim 2, for allegedly "making the images accessible to his congressional employees"); civil liability for criminal acts under Ohio Rev. Code 2307.60 (Claim 4); public disclosure of private facts (Claim 5); negligence (Claim 6); and civil conspiracy (Claim 7). (Am.

Compl. ¶¶ 88–143.)[2] She seeks $150,000 "for each time her image was downloaded," $150,000 for each alleged transfer to and among staff, and punitive damages. (*Id.* ¶ 87; *id.* at 30–31, Prayer ¶¶ 4–7.)

## V. APPLICABLE STANDARDS

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* The Court may consider "the Complaint and any exhibits attached thereto, public records, [and] items appearing in the record of the case." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008); *see* Fed. R. Civ. P. 10(c). "[W]hen a written instrument contradicts allegations in the complaint to which it is attached, the exhibit trumps the allegations." *Cates v. Crystal Clear Techs., LLC*, 874 F.3d 530, 536 (6th Cir. 2017) (citation omitted). A statutory exclusion supports dismissal where "the allegations in the complaint suffice to establish that ground." *Jones v. Bock*, 549 U.S. 199, 215 (2007).

Under UPEPA, the Court "shall dismiss with prejudice a cause of action" where the movant establishes that it is based on a communication described in Ohio Rev. Code 2747.01(B), the responding party fails to establish an exception under Ohio Rev. Code 2747.01(C), and, as relevant here, the movant establishes that "[t]he responding party failed to state a cause of action upon which relief can be granted." Ohio Rev. Code 2747.04(C)(1)–(3)(a).

---

[2] Claim 3 is asserted only against Defendants Poe and Angelos. (Am. Compl. ¶¶ 100–105.)

# VI. LAW AND ARGUMENT

## A. Claims 1 and 2 Fail to State a Claim Under 15 U.S.C. § 6851.

### 1. Plaintiff's own allegations place both claims within § 6851(b)(4)(C).

An identifiable individual "may not bring an action for relief under this section relating to . . . a matter of public concern or public interest." 15 U.S.C. § 6851(b)(4)(C). Congress did not limit this exclusion to disclosures made in good faith, as it did in subparagraph (B), and it did not require that the image itself be the subject of public debate; it barred any action "relating to" such a matter. "Relating to" means "to stand in some relation; to have bearing or concern; to pertain; refer; to bring into association with or connection with." *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 383 (1992) (citation omitted).

Speech deals with matters of public concern when it can "be fairly considered as relating to any matter of political, social, or other concern to the community," or when it "is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public." *Snyder v. Phelps*, 562 U.S. 443, 453 (2011) (citations omitted); *accord Marquardt v. Carlton*, 971 F.3d 546, 549 (6th Cir. 2020) ("Speech involves a matter of public concern when it can be 'fairly considered as relating to any matter of political, social, or other concern to the community.'" (citation omitted)). The inquiry looks to "the content, form, and context of a given statement, as revealed by the whole record." *Id.* (citation omitted). *Marquardt* found public concern where an event "generated intense public debate and quickly became a matter of public discussion," *id.* at 552, and the Sixth Circuit has described speech about "how the 2018 election was conducted" as "clearly relat[ing] to 'a matter of public concern.'" *Schwamberger v. Marion Cnty. Bd. of Elections*, 988 F.3d 851, 856 (6th Cir. 2021). As to a candidate for office, "anything which might touch on an official's fitness for office is relevant," and a candidate "can hardly argue that his qualities as a husband or father remain of 'purely private' concern." *Monitor Patriot Co.*

*v. Roy*, 401 U.S. 265, 273–74 (1971) (citation omitted). Plaintiff alleges that a congressman seeking reelection was publicly accused of abusing his former wife and his daughter, that the accusations drew national and international attention, and that he posted the folder during a livestream responding to them. (Am. Compl. ¶¶ 23, 25, 27, 32–35.) She alleges that the image documents a bruise on R.M.'s shoulders associated with a broken collarbone suffered after she was in Defendant Miller's custody (*id.* ¶ 56)—the very injury underlying the public accusations against him. An action premised on that disclosure, in that forum, for that purpose, "relat[es] to . . . a matter of public concern or public interest." 15 U.S.C. § 6851(b)(4)(C).

The amendment does not change this. Plaintiff now alleges that, even if the image was of public concern, the depicted anatomy was not, and that Defendants "could have redacted" it. (*Id.* ¶¶ 84–85.) But the exclusion turns on whether the *action* relates to a matter of public concern, not on whether each portion of an image was necessary to the speaker's point. Plaintiff does not, and could not, allege that the disclosure of a document concerning the child's injury, offered in response to public accusations about that injury, was unrelated to a matter of public concern. Claim 2 relates to the same matter: Plaintiff alleges that the image was conveyed to Defendant Miller's staff for the purpose of the same public response. (*Id.* ¶¶ 29, 67–68.) Both claims are excluded.

**2. Plaintiff does not plausibly allege the required mental state.**

Section 6851 reaches a disclosure "made by a person who knows that, or recklessly disregards whether, the individual has not consented to such disclosure." 15 U.S.C. § 6851(b)(1)(A). The mental state attaches to "such disclosure"—the disclosure of the intimate visual depiction. A person cannot know, or consciously disregard, that someone has not consented to a disclosure he does not know he is making. Section 6851 is "colloquially known as the 'revenge porn statute.'" *Doe v. X Corp.*, 821 F. Supp. 3d 632, 635 (N.D. Tex. 2026). It is not a vehicle for liquidated damages based on an error in a document compilation. *Cf. Doe v. T.T., II, Inc.*, No. 2:24-

cv-00879 (D. Utah Aug. 6, 2026) ("The statute was not intended to provide liquidated damages for any mistake made in such a business relationship . . . .").

Plaintiff's specific allegations describe, at most, a failure to review. She alleges that Defendant Miller "recklessly failed to review the folder he shared" and "gave Minc carte blanche." (Am. Compl. ¶ 77.) That is an allegation about the diligence of his review, not about any awareness of the image or of a lack of consent. Plaintiff's new allegation that Defendant Miller "knew this nude image of R.M. was present in the download" rests on a single fact: that months earlier he received the photograph from Ms. Moreno on the parenting application. (*Id.* ¶ 57.) Receipt of a photograph does not plausibly establish knowledge that it later appeared on page 53 of a PDF compiled and redacted by counsel. *See Iqbal*, 556 U.S. at 678.

Plaintiff's own exhibit does not support the inference. Plaintiff attached, and repeatedly cites, Defendant Miller's sworn deposition. (Am. Compl. ¶¶ 36–38, 46, 65, 68.) In it, he testified that he "was told after the fact," that he did not know whether the folder contained such photos, that he "would never have thought" the image "would be included in there," and that he does not know how counsel obtained it. (Miller Dep. 52:21–24, 53:3–5, 55:7–13, 114:1–4, PageID #469–70, 472, 531.) The passage Plaintiff cites as a claim that he "was thinking about her privacy" (Am. Compl. ¶ 65) is this same denial of knowledge. The Court need not accept the testimony as true to see the point: Plaintiff's conclusory allegations of knowledge (*id.* ¶¶ 3, 57) rest on nothing but the fact that Defendant Miller once received the photograph from Ms. Moreno, and the exhibit Plaintiff chose to attach points the other way. *Cf. Cates*, 874 F.3d at 536 (exhibit prevails over contrary allegations). Those allegations are not plausible. *Iqbal*, 556 U.S. at 678. Claims 1 and 2 should be dismissed for this reason as well.

**3. Claim 2 pleads no facts about any transfer.**

New Claim 2 seeks $150,000 against a father for allegedly "making the images accessible to his congressional employees." (Am. Compl. ¶ 97.) The First Amended Complaint pleads no date, medium, recipient, or circumstance of any such transfer. Its only basis is an inference: because only the parents and court staff could access the OurFamilyWizard thread, Plaintiff reasons, Defendant Miller "had to transfer or distribute it." (*Id.* ¶ 67.) In the testimony Plaintiff cites for the next step in the chain (*id.* ¶ 68 (citing Miller Dep. 113:22–114:12)), Defendant Miller said that the other documents reached Mr. Minc "[f]rom my team," but that he does not know how Mr. Minc obtained the photograph. (Miller Dep. 114:1–12, PageID #531.) An inference drawn from who had access to a parenting application, as to a photograph the cited testimony does not connect to any transfer by Defendant Miller, does not "nudge[]" the claim "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. And Plaintiff herself alleges that the materials were compiled by Defendant Miller's staff together with his litigation counsel, who represents him in pending litigation against Ms. Moreno, and that the folder included a document titled as an exhibit. (Am. Compl. ¶¶ 15, 26, 29, 53.) To the extent any transmittal was to his own counsel for use in that litigation, it is a disclosure "as part of a legal proceeding," 15 U.S.C. § 6851(b)(4)(B)(ii), and Plaintiff's assertion that there was "no legitimate litigation purpose" (Am. Compl. ¶ 15) is a conclusion, not a fact.

**4. At minimum, the per-download, per-transfer, and punitive damages theories fail.**

Section 6851 provides that an individual "may recover the actual damages sustained by the individual or liquidated damages in the amount of $150,000." 15 U.S.C. § 6851(b)(3)(A)(i). The words "for each disclosure," which Plaintiff's paraphrase of the statute adds (Am. Compl. ¶¶ 89, 95, 101), do not appear in it. Nor does the statute make a defendant liable for a third party's act of

downloading an image; liability runs against "that person" who made the disclosure. *Id.* § 6851(b)(1)(A). The statute does not authorize punitive damages, which the Prayer seeks for alleged violations of "federal and Ohio law." (Am. Compl. at 31, Prayer ¶ 7.) If any part of Claims 1 or 2 survives, the Court should dismiss them to the extent they seek liquidated damages per download, per access, or per transfer, or punitive damages.

**B. Claim 4 Fails to State a Claim Under Ohio Rev. Code 2307.60.**

Section 2307.60(A)(1) permits a civil action by one "injured in person or property by a criminal act." Plaintiff predicates the claim on Ohio Rev. Code 2907.323(A)(2), "combined with" attempt and complicity. (Am. Compl. ¶¶ 106–121.) Each theory fails.

**1. Attempt and complicity require a mental state Plaintiff does not plausibly plead.**

Attempt requires that the defendant act "purposely or knowingly." Ohio Rev. Code 2923.02(A). Complicity by aiding and abetting requires proof that the defendant "shared the criminal intent of the principal." *State v. Johnson*, 93 Ohio St.3d 240, 754 N.E.2d 796 (2001), syllabus. Complicity by conspiracy incorporates Ohio Rev. Code 2923.01 (*see* Ohio Rev. Code 2923.03(A)(3)), which requires a "purpose to commit or to promote or facilitate the commission of" an enumerated offense; Ohio Rev. Code 2907.323 is not among them. Ohio Rev. Code 2923.01(A). For the reasons stated in Part A.2, Plaintiff does not plausibly allege that Defendant Miller acted with purpose, knowledge, or shared criminal intent. And the organizational-liability provisions Plaintiff invokes (Am. Compl. ¶ 116 (citing Ohio Rev. Code 2901.23, 2901.24)) concern organizations and their agents and have no application to Defendant Miller individually.

**2. Plaintiff does not plausibly allege a violation of Ohio Rev. Code 2907.323(A)(2).**

Section 2907.323(A)(2) addresses a parent's conduct with respect to material depicting "the person's child or ward" in a state of nudity. The Supreme Court of Ohio construed the parallel

possession provision, division (A)(3), to reach only material "where such nudity constitutes a lewd exhibition or involves a graphic focus on the genitals," and the United States Supreme Court upheld the statute as so construed, explaining that the construction "avoided penalizing persons for viewing or possessing innocuous photographs of naked children." *Osborne v. Ohio*, 495 U.S. 103, 113–14 (1990) (quoting *State v. Young*, 37 Ohio St.3d 249, 252, 525 N.E.2d 1363 (1988)). The Supreme Court of Ohio later declined to apply that construction to the creation offense in division (A)(1), *State v. Martin*, 2016-Ohio-7196, ¶ 17, but *Martin* does not address a parent's "use or transfer" under division (A)(2), and the First Amendment concerns that drove *Young* and *Osborne* apply with full force to a parent's use of an existing family photograph. Plaintiff pleads that the photograph documents a bruise associated with a broken collarbone (Am. Compl. ¶ 56); she does not allege a lewd exhibition or a graphic focus on the genitals, and her physician's letter states that the photograph "depicts her external genitalia, that is, her labia," without describing a lewd exhibition or a graphic focus. (Doc. #20-1, PageID #188.)

Division (A)(2) also does not apply where the material is "disseminated, displayed, possessed, [or] controlled . . . or presented for a bona fide . . . judicial, or other proper purpose, by or to a . . . prosecutor, judge, or other person having a proper interest in the material or performance." Ohio Rev. Code 2907.323(A)(2). Plaintiff pleads that Defendant Miller received the image on a parenting application the domestic-relations court ordered the parents to use, in a PDF titled as an exhibit (Am. Compl. ¶¶ 53, 57); that his counsel in the pending defamation action assembled the documents (*id.* ¶¶ 15, 26, 29); and that his alleged transmittal was to that counsel and his own staff (*id.* ¶¶ 53, 67). Giving court-related materials to one's own lawyer for use in litigation is a transfer to an "other person having a proper interest in the material or performance." Division (A)(2) also requires a culpable mental state. Where a statute "neither specifies culpability

nor plainly indicates a purpose to impose strict liability, the element of the offense is established only if a person acts recklessly." Ohio Rev. Code 2901.21(C)(1); *see Osborne*, 495 U.S. at 115. For the reasons stated in Part A.2, Plaintiff does not plausibly allege that Defendant Miller used or transferred material he knew, or recklessly disregarded, depicted his daughter in a state of nudity. Claim 4 should be dismissed.

### C. Claim 5 Fails Because the Matter Was of Legitimate Public Concern and Plaintiff Does Not Plausibly Allege an Intentional Publication.

Plaintiff replaced her intrusion claim with a claim for public disclosure of private facts. (Am. Compl. ¶¶ 122–127.) Under Ohio law, that claim requires, among other elements, that "[t]he publication must have been made intentionally, not negligently," and that "[t]he matter publicized must not be a legitimate concern to the public." *Killilea v. Sears, Roebuck & Co.*, 27 Ohio App.3d 163, 166–67, 499 N.E.2d 1291 (10th Dist. 1985). Both elements fail. For the reasons stated in Part A.1, the publication concerned a matter of legitimate public concern, and the First Amendment independently protects it. *Snyder*, 562 U.S. at 453; *Monitor Patriot*, 401 U.S. at 273–74. And Plaintiff's conclusory assertion that Defendants acted "recklessly and intentionally" (Am. Compl. ¶ 124) is not a factual allegation of intent as to Defendant Miller; her specific allegations and her exhibit describe, at most, a failure to review a folder prepared by counsel. (*Id.* ¶ 77; Miller Dep. 52:21–24, 55:7–13, PageID #469, 472.) Recklessness is not intent, and *Killilea* expressly excludes negligent publication. Claim 5 should be dismissed.

### D. Claim 6 Fails Because It Seeks Only Emotional-Distress Damages Ohio Does Not Allow.

Plaintiff now disclaims any claim for negligent infliction of emotional distress. (Am. Compl. ¶ 133.) But the label does not change the substance. The only injuries alleged are "emotional distress; pain and suffering; and reputational harm." (*Id.* ¶ 136.) Plaintiff alleges no physical injury or physical peril. Ohio limits recovery for negligently inflicted emotional distress

to cases in which the plaintiff "witnessed or experienced a dangerous accident or appreciated the actual physical peril." *Heiner v. Moretuzzo*, 73 Ohio St.3d 80, 86 (1995). A negligence claim seeking only damages Ohio law does not permit in these circumstances fails to state a claim. Moreover, the only conduct alleged against Defendant Miller is the publication of documents in response to public accusations, which is speech on a matter of public concern. Claim 6 should be dismissed.

### E. Claim 7 Fails Because Plaintiff Alleges No Malicious Combination and No Underlying Intentional Wrong.

Civil conspiracy is "a malicious combination of two or more persons to injure another in person or property, in a way not competent for one alone, resulting in actual damages." *Kenty v. Transamerica Premium Ins. Co.*, 72 Ohio St.3d 415, 419, 650 N.E.2d 863, 865 (1995) (citation omitted). "An underlying unlawful act is required before a civil conspiracy claim can succeed." *Williams v. Aetna Fin. Co.*, 83 Ohio St.3d 464, 700 N.E.2d 859, 868 (1998). Because conspiracy requires both intent and agreement, "there can be no negligent conspiracy or, conversely, conspiracy to commit negligence." *Hunt v. City of Toledo Law Dep't*, 881 F. Supp. 2d 854, 880 (N.D. Ohio 2012).

Plaintiff's amended allegations describe agency, not a malicious combination. She alleges that Defendant Miller "directed the other Defendants, working as his agents," and that "[a]ll three worked under his direction and as his agents." (Am. Compl. ¶¶ 29, 140.) An agreement to publish documents rebutting public accusations is not an agreement to commit an unlawful act, and Plaintiff's theory of the image's inclusion is that it resulted from a failure to review and a hurried restoration of files—carelessness, not a common design to injure R.M. (*Id.* ¶¶ 47, 71, 77.) Because the underlying claims fail for the reasons stated above, Claim 7 fails with them.

### F. UPEPA Independently Requires Dismissal of Claims 4 Through 7 With Prejudice and an Award of Fees.

#### 1. This Motion is timely.

A party may file a motion for expedited relief "[n]ot later than sixty days after a party is served with a complaint, cross-claim, counterclaim, third-party claim, or other pleading that asserts a cause of action to which this chapter applies." Ohio Rev. Code 2747.02. The First Amended Complaint is a "pleading that asserts a cause of action." It was filed and served on October 22, 2026 (Doc. #20), and this Motion is filed well within sixty days of that date.

Defendant Miller has never been out of time. He invoked UPEPA within sixty days of service of the original Complaint (Docs. #12, #17), and renews that request only because Plaintiff amended and ***asked the Court to hold that her amendment mooted it***. (Doc. #23 at 1–3, 8, PageID #566–68, 573.) Having urged that result, Plaintiff cannot be heard to argue that the renewed motion her amendment required is untimely; she anticipated that Defendants would "refile their UPEPA motions" and objected only that "UPEPA does not apply in federal courts." (*Id.* at 3, PageID #568.) In any event, the statute authorizes the Court to "extend the sixty-day period to file the motion for expedited relief for good cause shown," Ohio Rev. Code 2747.02, and Plaintiff's amendment and request are good cause.

#### 2. UPEPA applies to the state-law claims on the ground Defendant Miller invokes.

The General Assembly enacted UPEPA "to confer substantive immunity from suit, and not merely immunity from liability," Ohio Rev. Code 2747.01(E), and mandated fee-shifting where a motion is granted, Ohio Rev. Code 2747.05(A). Defendant Miller is aware of no decision of the Sixth Circuit addressing whether Ohio's UPEPA applies in federal court. He recognizes that *Berk v. Choy*, 607 U.S. 187 (2026), held that a state requirement that a medical-malpractice plaintiff file

an expert affidavit of merit does not apply in federal court because the Federal Rules answer the same question and do not require a plaintiff to produce evidence to survive dismissal.

This Motion does not implicate that concern. Defendant Miller asks the Court to impose no evidentiary burden on Plaintiff beyond what Rules 8 and 12 require. He does not ask the Court to consider matters outside the pleadings under Rule 12(d), to require a prima-facie evidentiary showing, to stay proceedings under Ohio Rev. Code 2747.03, or to receive evidence. He relies solely on the prong of UPEPA that directs dismissal where "[t]he responding party failed to state a cause of action upon which relief can be granted," Ohio Rev. Code 2747.04(C)(3)(a)—the same inquiry the Court conducts under Rule 12(b)(6). Every conflict Plaintiff identifies concerns features Defendant Miller does not invoke: the authorities she cites describe UPEPA as a mechanism that "essentially supplants the Rule 12(b)(6) motion to dismiss standard with the Rule 56 summary judgment standard," and address "UPEPA's prima facie–showing requirement." (Doc. #23 at 5–6, PageID #570–71 (citations omitted).) Because the state-law claims are before the Court on supplemental jurisdiction, the Sixth Circuit "appl[ies] the substantive law of the forum state in evaluating them." *Jones v. City of Elyria*, 947 F.3d 905, 912 (6th Cir. 2020). Where the Court dismisses a state-law claim on Rule 12(b)(6) standards, the substantive consequences Ohio attaches to that dismissal—immunity from further suit on the claim and an award of fees—follow without any departure from the Federal Rules.[3] Independently of UPEPA, the First Amendment

[3]Plaintiff previously asserted that Defendant Miller asked the Court to require her to produce evidence. (Doc. #23 at 5, PageID #570.) He did not. (Doc. #17 at 18–19, PageID #116–17.) This Motion likewise relies only on Ohio Rev. Code 2747.04(C)(3)(a). Ohio courts of appeals have held that Ohio Rev. Code 2747.04(A)(1) requires a hearing, *Lawrence v. Gilby's Pizza Craven, L.L.C.*, 2026-Ohio-1797, ¶¶ 5–6 (6th Dist.), though "[t]he statute does not require that the hearing be oral," *Walker v. Arrington*, 2026-Ohio-3881, § III.A (8th Dist.). Defendant Miller requests oral argument, which the Court may treat as any hearing it deems required, and seeks no discovery or evidentiary presentation.

bars the state-law claims for the reasons stated in Part A.1. *Snyder*, 562 U.S. at 453; *Monitor Patriot*, 401 U.S. at 273–74.

**3. Claims 4 through 7 are based on Defendant Miller's exercise of free speech on a matter of public concern.**

UPEPA applies to a claim based on "[t]he person's communication on an issue under consideration or review in a legislative, executive, judicial, administrative, or other governmental proceeding," Ohio Rev. Code 2747.01(B)(2), and to a claim based on "[t]he person's exercise of the right of freedom of speech and of the press . . . guaranteed by the United States Constitution or the Ohio Constitution, on a matter of public concern." Ohio Rev. Code 2747.01(B)(3). Every state-law claim against Defendant Miller is based on the same conduct: his livestream and the posts linking to documents he offered in response to public accusations that were simultaneously the subject of pending domestic-relations and defamation proceedings. (Am. Compl. ¶¶ 26–38, 77, 115, 124, 129–132, 140–141.) For the reasons stated in Part A.1, that is speech on a matter of public concern. That the claims target the contents of materials shared rather than words spoken does not remove them from UPEPA's scope, which the Court must "broadly construe and apply." Ohio Rev. Code 2747.06(B).

**4. No exception in Ohio Rev. Code 2747.01(C) applies.**

Plaintiff bears the burden to establish an exception. Ohio Rev. Code 2747.04(C)(2). None applies. This is not an action against a governmental unit or an employee "acting or purporting to act in an official capacity," Ohio Rev. Code 2747.01(C)(1): Plaintiff sues Defendant Miller in his individual capacity, alleges that the conduct was undertaken "not as part of any congressional function," and attaches a post stating that the documents were "produced by my personal attorneys and paid for by me directly." (Am. Compl. ¶¶ 14, 30, 41; Doc. #20-6, PageID #212.) This is not an enforcement action by a governmental unit, Ohio Rev. Code 2747.01(C)(2); it does not arise

from the sale or lease of goods or services, Ohio Rev. Code 2747.01(C)(3); and it does not seek recovery for bodily injury or wrongful death, Ohio Rev. Code 2747.01(C)(4). (Am. Compl. ¶¶ 120, 126, 136, 142.)

**5. Claims 4 through 7 must be dismissed with prejudice, and fees must be awarded against the next friend.**

For the reasons stated in Parts B through E, Plaintiff "failed to state a cause of action upon which relief can be granted" on Claims 4 through 7. Ohio Rev. Code 2747.04(C)(3)(a). The Court therefore "shall dismiss" them "with prejudice," Ohio Rev. Code 2747.04(C), and "shall award reasonable attorney's fees, court costs, and other reasonable litigation expenses to the moving party." Ohio Rev. Code 2747.05(A). That award should run against Emily Moreno, who filed and is prosecuting this action as next friend, and not against R.M. Ohio provides that "[t]he next friend shall be liable for the costs of the action brought by him." Ohio Rev. Code 2307.12; *see also* Fed. R. Civ. P. 17(c). Assessing a fee award against a two-and-a-half-year-old child who did not choose to sue would be inconsistent with both Ohio next-friend practice and the statute's purpose. Defendant Miller requests leave to submit an application for fees and expenses as to Ms. Moreno within thirty days of the Court's ruling.[4]

**G. Alternatively, the Court Should Decline Supplemental Jurisdiction Over the State-Law Claims.**

If the Court dismisses Claims 1 and 2 but declines to reach the merits of Claims 4 through 7 under Rule 12(b)(6) or UPEPA, it should decline supplemental jurisdiction over them. 28 U.S.C.

---

[4]After Defendant Miller moved for expedited relief on Plaintiff's original intrusion claim, Plaintiff abandoned it by amendment. (*Compare* Doc. #1 ¶¶ 88–92, *with* Doc. #20.) UPEPA provides that a voluntary dismissal without prejudice of a cause of action that is the subject of a motion for expedited relief "does not affect a moving party's right to obtain a ruling on the motion for the purpose of obtaining attorney's fees, court costs, and other litigation expenses." Ohio Rev. Code 2747.04(E)(1). Defendant Miller reserves his right to fees as to that claim.

§ 1367(c)(3). "When, as here, all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims." *Musson Theatrical, Inc. v. Fed. Express Corp.*, 89 F.3d 1244, 1254–55 (6th Cir. 1996).

## VII. CONCLUSION

For the foregoing reasons, Defendant Max L. Miller respectfully requests that the Court (1) dismiss Claims 1 and 2 as to him for failure to state a claim or, at minimum, dismiss them to the extent they seek liquidated damages per download, per access, or per transfer, or punitive damages under 15 U.S.C. § 6851; (2) dismiss Claims 4 through 7 as to him with prejudice pursuant to Fed. R. Civ. P. 12(b)(6) and Ohio Rev. Code 2747.04(C); (3) award him his reasonable attorney's fees, court costs, and other reasonable litigation expenses pursuant to Ohio Rev. Code 2747.05(A) against Emily Moreno as next friend, and not against R.M.; and (4) set this Motion for oral argument.

Respectfully submitted,

*<u>/s/ Adam M. Brown, Esq.</u>*
LARRY W. ZUKERMAN, Esq. (0029498)
ADAM M. BROWN, Esq. (0092209)
Zukerman, Lear, Murray & Brown Co., L.P.A.
3912 Prospect Avenue
Cleveland, Ohio 44115
(216) 696-0900
Fax (216) 696-8800
lwz@zukerman-law.com
amb@zukerman-law.com

*Counsel for Defendant Max L. Miller*

## LOCAL RULE 7.1(f) CERTIFICATION

Undersigned counsel certifies that this case has not yet been assigned to a case management track and that the foregoing Memorandum in Support adheres to the twenty (20) page limitation that N.D. Ohio LR 7.1(f) prescribes for memoranda relating to dispositive motions in unassigned cases.

*/s/ Adam M. Brown, Esq.*
ADAM M. BROWN, Esq. (0092209)
Counsel for Defendant Max L. Miller

## CERTIFICATE OF SERVICE

I hereby certify that on November 5, 2026, the foregoing was filed electronically. Notice of this filing will be sent to all counsel of record by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

I further certify that on November 5, 2026, a copy of the foregoing was served by regular U.S. Mail upon the following Defendants, who have not appeared, at the addresses listed in the First Amended Complaint: Philip Poe, 16100 Bald Eagle School Rd., Brandywine, MD 20613; and Abigail Angelos, 400 K St. NW, Apt 1219, Washington, DC 20001.

*/s/ Adam M. Brown, Esq.*
ADAM M. BROWN, Esq. (0092209)
Counsel for Defendant Max L. Miller